UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUFEN MA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DAVID SENN,<br><br>　　　　Defendant. | Case No. 23-cv-05060-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 9 |

## I.　INTRODUCTION

Plaintiff Shufen Ma, proceeding pro se, brings employment discrimination claims against David Senn and the San Francisco Estuary Institute. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for January 12, 2024 pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.　BACKGROUND

### A.　Allegations in the Complaint

In her Complaint, Plaintiff alleges that she is a "60 year old female immigrant from China" and that Defendants have engaged in "repeated and intentional employment discrimination against [her based on her] age, sex, race, and national origin" dating back to 2014. Compl. ¶ 6.

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

According to Plaintiff, in her "scientific research career, [she has] investigated aquatic biogeochemistry (including sediments, water column) in freshwater systems, estuaries, marine, hydrothermal vents and acid mine drainage biofilms to understand the ecology (microbes, algae, fish, benthic organisms, and plants) and to solve important environmental problems." *Id.* ¶ 7. She further alleges that "[d]uring [her] PhD research in the University of Delaware, [she] worked with Delaware's State officials and local environmental organizations to solve water quality problems such as nutrients overloading, harmful algal blooms and fish kills in the Delaware Inland Bays." *Id.* ¶ 8.

Based on her qualifications and experience, Plaintiff "believe[s] that the research [she has] done has made significant contributions to [the] understanding of biogeochemistry in a variety of environments" and that she has been "the most qualified candidate for the Nutrients Project in San Francisco Estuary Institute." *Id.* ¶ 13. Nevertheless, she alleges, "[f]rom 2014 to 2021, [she] applied four times for the environmental scientist position at San Francisco Estuary Institute to investigate nutrients biogeochemistry but never got an interview." *Id.* ¶ 14.

According to Plaintiff, in August 2014 she first learned that David Senn had started the Nutrients Project at the San Francisco Estuary Institute and emailed him to inquire about job opportunities. *Id.* ¶ 15. Senn responded that a job opening was going to be posted soon and told Plaintiff that he would be happy to talk some time about job opportunities. *Id.* Plaintiff saw the job posting on Indeed.com in January 2015 and went to talk to Senn about the position. *Id.* ¶ 16. She alleges that they talked for more than an hour in Senn's office and that Senn invited her to apply for the position. *Id.* Plaintiff alleges that she applied but did not get an interview. According to Plaintiff, Senn told her in April 2015 "that he had offered the position to someone, a young male Caucasian with a master's degree." *Id.* Plaintiff alleges that she was more qualified for the position because she has "multiple peer-reviewed publications and newspaper report[s] to demonstrate that [she has] used cutting-edge technology to investigate water quality, nitrogen and phosphorus redox cycling in water column and sediments, harmful algal bloom and fish kill in lake and estuaries." *Id.*

Plaintiff alleges that in March 2016, she emailed Senn again after reading his "2015

1  Progress Report" and disagreeing with his interpretation of the data. *Id.* ¶ 17. In her email,
2  Plaintiff provided her analysis and "recommended what should be done next." *Id.* Plaintiff offered
3  to "volunteer to do in situ and lab incubation to study nitrogen and phosphorus cycling at water-
4  sediment interface at North Bay delta and South Bay sloughs" but Senn refused Plaintiff's offer to
5  work as a volunteer. *Id.* ¶¶ 17-18. Senn told Plaintiff that her ideas were "interesting" but that his
6  program "[didn't] have the resources to support the sediment core sampling aspects of such a
7  project, or the lab facilities to support the project." *Id.* ¶ 18.

   In June 2016, Plaintiff alleges, she saw "an environmental scientist position advertisement on indeed.com so [she] emailed [Senn]" to tell him she had seen the ad and that it "matched [her] expertise." *Id.* ¶ 19. Senn allegedly told Plaintiff that she should "apply as [she] saw fit" and Plaintiff applied "but again didn't hear from him [and], never got an interview." *Id.* According to Plaintiff, Defendants advertised three environmental scientist positions in 2016, "one for biogeochemist, two for data analysts." *Id.* Plaintiff alleges that her expertise "fit the biogeochemist position description very well" but that that position was cancelled. *Id.* She alleges that Defendants "hired two female Caucasian data scientists" for the other two positions. *Id.*

   Plaintiff alleges that in January 2021, as she was browsing on the website of the San Francisco Estuary Institute, she saw that a "young female Caucasian employee" had collected data on denitrification – the work Plaintiff had proposed to do on a volunteer basis. *Id.* ¶ 20. Plaintiff did not see a listing for the position and therefore "suspected that this was an irregular hiring." *Id.*

   Plaintiff alleges that in the same time period, she "also saw a project manager and senior scientist position for the Nutrients Project announced on [the San Francisco Estuary Institute's] website and applied." *Id.* ¶ 21. Again, Plaintiff "never got an interview." *Id.* Plaintiff alleges, "I am certain that this position was also an irregular hiring because I didn't see the advertisement on public job board, and this employee was already working with people in the defendant's institute before the hiring." Plaintiff further alleges:

> The employee hired (who the defendant indicated a mixed-race female) may have management skills, but her work was focused on pesticides. It seems that this employee had only worked in the defendant's institute for one year from March 2021 to March 2022. I believe I was well qualified for the position because I have much more

3

> knowledge in nutrients biogeochemistry, harmful algal blooms, fish kills, benthic organisms' ecology, plant biogeochemistry, as well as cutting-edge technology. I had experience working with government officials, local environmental organizations, and the public. I have taken lead in several projects bringing about many peer reviewed publications.

*Id.*

In October 2021, Plaintiff applied "the fourth time for an environmental scientist position for sensor technology" and again did not receive an interview. *Id.* ¶ 22.

Plaintiff alleges that Defendants' failure to hire her for the Nutrients Project were "not isolated events but were intentional and related in the same pattern" of discrimination against her. *Id.* ¶ 25.

Plaintiff asserts five claims in the complaint: 1) employment discrimination based on age, sex, race, and national origin under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and the Equal Pay Act ("EPA") based on Defendants' failure to hire her for the job opening posted by Defendants in January 2015 (Claim One); 2) employment discrimination based on age, race and national origin under Title VII of the Civil Rights Act of 1964, the ADEA and the EPA based on failure to hire her for the biogeochemist position for which she applied in June 2016, which was canceled (Claim Two); 3) employment discrimination based on age, race and national origin under Title VII of the Civil Rights Act of 1964, the ADEA and the EPA based on Defendants' failure to accept her offer to conduct work on a volunteer basis and then hiring a "young female Caucasian" to perform the same work (Claim Three);   4) employment discrimination based on age, race and national origin under Title VII of the Civil Rights Act of 1964, the ADEA and the EPA based on failure to hire her for the project manager and senior scientist position advertised in January 2021 (Claim Four); and 5) employment discrimination based on age, race, sex, and national origin under Title VII of the Civil Rights Act of 1964, the ADEA and the EPA based on failure to hire her for the environmental scientist position for which she applied in October 2021 (Claim Five).

### B.     Administrative Complaint

On September 2, 2022, Plaintiff filed a discrimination charge under California Government Code section 12960 against the San Francisco Estuary Institute with California's Civil Rights

4

Division ("CRD"). Defendants' Request for Judicial Notice ("Defendants' RJN"), Ex. A ("DFEH Charge"). In the DFEH Charge, Plaintiff alleged that she was discriminated against on or before October 16, 2021 based on her age (over 40) and race, offering the following "particulars":

> I believe I was discriminated against based on my Age (59) and my Race (Chinese) resulting in me being denied hire multiple times to the position of Environmental Scientist. Specifically, I contacted David Senn, Program Director, to inquire about the job and provide him with my educational qualifications and specialization in water quality. I was informed that based on my experience I would be a good match. After applying, I was not selected even for an interview. After follow-up, Mr. Senn advised me he was just looking for someone to drive the boat. Each time the position was filled by an individual significantly younger and non-Asian (Caucasian).

Defendants' RJN, Ex. A. On October 24, 2022, the charge filed with the CRD was sent to the EEOC for dual filing. Defendant's RJN, Ex. B (Notice of Charge of Discrimination in Jurisdictions Where an FEP Agency Will Initially Process).[2]

### C. The Motion

Defendants assert that all of Plaintiff's claims are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for several reasons. First, they contend the Title VII and ADEA claims are time-barred because Plaintiff did not "submit an administrative charge to the EEOC within 180 days of the act of alleged discrimination, or, where the plaintiff initially submits a charge to a state agency, within 300 days of the act of alleged discrimination." Motion at 12 (citing 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (holding Title VII claim not filed within time frame set forth in § 2000e–5(e) is "time barred"); *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674–75 (9th Cir. 1988) (same statute of limitations applies for ADEA claims.)).

Second, Defendants argue that the Title VII and ADEA claims asserted against David Senn should be dismissed because neither statute allows for the imposition of liability against individual

---

[2] Exhibit B to Defendant's RJN is a notice indicating that Plaintiff's DFEH charge was received by the state Civil Rights Department and forwarded to the EEOC for dual filing. Therefore, the charge filed with the DFEH is also the EEOC charge. In this Order, the Court refers to the EEOC Charge and the DFEH Charge interchangeably to refer to the document found in Defendant's RJN, Ex. A at ECF p. 9.

5

employees. *Id*. at 14 (citing *Miller v. Maxwell's Int'l, Inc*., 991 F.2d 583, 589 (9th Cir. 1993); *Holly D v. Cal. Inst. of Tech*., 339 F.3d 1158, 1179 (9th Cir. 2003) ("[W]e have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees."); *Cai v. Chiron Corp*., No. C 04-1587 CRB, 2004 WL 1837985, *2 (N.D. Cal. Aug. 17, 2004) (holding "it is inconceivable that Congress intended to allow civil liability to run against individual employees" and dismissing claims against individual supervisors asserted under Title VII and the ADEA.); *Pink v. Modoc Indian Health Project, Inc*., 157 F.3d 1185, 1189 (9th Cir. 1998) (upholding district court's dismissal of plaintiff's discrimination claims against her supervisor because "civil liability for employment discrimination does not extend to individual agents of the employer")).

Third, Defendants contend Plaintiff's first and fifth claims are barred to the extent they are based on alleged sex discrimination because Plaintiff did not complain of sex discrimination in her administrative charge but only race and age discrimination and therefore, she has failed to exhaust her administrative remedies as to her claims for sex discrimination. *Id.* at 14-15.

Fourth, Defendants contend all of Plaintiff's claims fail to the extent they assert national origin discrimination because Plaintiff did not complain of national origin discrimination in her administrative charge but only race and age discrimination and therefore, she has failed to exhaust her administrative remedies as to her claims for national origin discrimination. *Id.* at 15.

Sixth, Defendants assert Plaintiff failed to exhaust her administrative remedies as to any of her claims to the extent they are asserted against David Senn because he was not named in her administrative charge. *Id.* at 16.

Seventh, Defendants argue that Plaintiff has not alleged sufficient facts to state a viable claim for discrimination based on sex, national origin or race under Title VII. *Id.* at 16-18. Likewise, Defendants contend, Plaintiff has not alleged sufficient facts to state a claim for age discrimination under the ADEA. *Id.* at 19.

Finally, Defendants assert Plaintiff cannot assert any viable claim under the EPA because that law does not apply to someone who was never hired. *Id.* at 19-20. Furthermore, Defendants assert, the EPA only applies to unequal pay based on sex and so Plaintiff's EPA claims based on

race and national origin fail for this additional reason.

### D. Opposition

Plaintiff has filed an Opposition brief, along with her own declaration describing communications between the parties at a June 8, 2023 DFEH mediation and a request for judicial notice asking the Court to take judicial notice of 1) an email exchange between Plaintiff and a board member of the San Francisco Estuary Institute; 2) an official DFEH letter acknowledging receipt of Plaintiff's intake form; and 3) an email exchange between Plaintiff and the DFEH representative assigned to her case.

In her Opposition brief, Plaintiff argues that: 1) she "has sufficiently alleged recurring acts of discrimination establishing a continuing violation, rendering her claims timely under Ninth Circuit precedent"; 2) she "properly exhausted administrative processes by filing a DFEH complaint naming San Francisco Estuary Institute and David Senn on notice of her allegations"; 3) she "adequately pleaded facts supporting plausible claims for denial of employment based on impermissible biases against her sex, race, national origin, and age"; and 4) Defendants "confuse what must be pleaded under federal standards with what must be ultimately proven[,]" thus "attempt[ing] to prematurely impose evidentiary burdens[.]" Opposition at 10.

With respect to the timeliness of her claims, Plaintiff asserts that her EEOC charge relates back to the September 2, 2022 filing of the DFEH charge and contends the DFEH charge would have been filed on August 23, 2022 – the day after her intake interview – but the DFEH representative conducted the interview fell ill and was out of the office for several days after the interview. *Id.* at 11. She further asserts that her claims are timely under the ongoing violations doctrine because there have been additional acts of discrimination after the ones alleged in the complaint that are similar to the others, occurring as recently as June 8, 2023. *Id.*

In particular, Plaintiff alleges in her Opposition brief that she "experienced discrimination[ ] three times more[,] on September 5, 2022, [February] 20, 2023, and June 8, 2023." *Id.* at 6. First, she describes an email she sent to Eileen White, a board member of the San Francisco Estuary Institute, on September 5, 2022, informing White of her ongoing efforts to obtain employment there, which she describes as "a form of job inquiry." *Id.* at 6-7. According to

7

1    Plaintiff, White responded by telling Plaintiff that she was copying David Senn and Plaintiff, in
2    turn, emailed White to tell her she did not believe Senn was interested in hiring her; according to
3    Plaintiff, she did not hear back from White after that or receive any communication from Senn in
4    response to her inquiry. *Id.* at 7. Therefore, Plaintiff asserts, Defendants discriminated against
5    her in September 2022.

6    Next, Plaintiff explains that on February 5, 2023, she "forwarded her communication with
7    Ms. White to the DFEH representative Ms. Blackwell" and on February 20, 2023, "Ms. Blackwell
8    verbally reviewed Defendant's response to Plaintiff." *Id.* According to Plaintiff, she "learned that
9    the program manager and senior scientist position was still open, which indicated that the position
10   was open when Ms. White copied Plaintiff's email to David Senn on September 5, 2022." *Id.* at
11   7-8. In addition, Plaintiff states, she "asked Ms. Blackwell to tell Defendant that Plaintiff would
12   do anything to help investigate harmful algal blooms and fish kills and wouldn't mind
13   volunteering" but "Defendant didn't respon[d]." *Id.* Therefore, Plaintiff asserts, "the span of
14   Plaintiff's fourth claim extended to February 20, 2023."

15   Finally, Plaintiff contends the discrimination extended to June 8, 2023 because at the
16   mediation conducted by the DFEH representative on that date, when Plaintiff asked why she
17   "couldn't be the program manager and senior scientist as the position was still open in February
18   2023" Defendants told her the position had been filled by Lisa Hunt but in fact, Hunt "had only
19   worked with Defendant for one year from March 2021 to March 2022." *Id.* at 8.

20   According to Plaintiff, these discriminatory acts, along with the earlier ones alleged in the
21   Complaint, fall under the continuing violation doctrine because "[t]he alleged acts are related by a
22   common type of discrimination based on sex, race, national origin, and age" and "involve the
23   same decisionmaker, Defendant David Senn, evidencing a pattern of discriminatory animus." *Id.*
24   at 12. Therefore, she asserts, she has "complied with the Title VII and ADEA time limits for
25   exhausting administrative remedies" and her "claims reaching back to 2015 are timely." *Id.* at 12.

26   Plaintiff also rejects Defendants argument that David Senn must be dismissed because
27   individuals cannot be held liable for employment discrimination under Title VII and the ADEA.
28   *Id.* at 12-13. Plaintiff contends "the Ninth Circuit has recognized individual liability where the

8

1    individual exercised significant control over Plaintiff's hiring, firing, or conditions of

2    employment." *Id*. at 13 (citing *Holly D. v. Cal. Inst. of Tech*., 339 F.3d 1158, 1179 (9th Cir.

3    2003)). According to Plaintiff, the allegations as to Senn are sufficient to establish individual

4    liability under this exception. *Id.*

5          Plaintiff argues that she has sufficiently exhausted her claims for sex discrimination,

6    asserted in her first and fifth claims, because "the allegations in Plaintiff's DFEH charge that she

7    was passed over for less qualified male candidates, together with her age and race allegations,

8    were sufficient to put Defendant on notice of possible sex discrimination claims as well." *Id.* at

9    13. Plaintiff continues, "Plaintiff's federal complaint thus reasonably expands upon the DFEH

10   charge, and exhaustion requirements are satisfied." *Id.* at 14. Similarly, Plaintiff argues that "the

11   factual allegations in Plaintiff's DFEH charge were sufficient to put Defendant on notice" of her

12   discrimination claims based on national origin. *Id.* In particular, she argues that she "alleged

13   Defendant hired less qualified, non-Chinese candidates in her place multiple times" and "[t]hese

14   allegations gave Defendant ample notice to investigate Plaintiff's national origin claims further."

15   *Id.*

16         Plaintiff argues that she adequately exhausted her administrative remedies as to Senn

17   because he was named on her DFEH intake form as a co-respondent. *Id.* She further contends

18   Senn and the San Francisco Estuary Institute should be considered an "integrated enterprise" for

19   the purposes of exhaustion. *Id.* (citing *Cook v. Arrowsmith Shelburne, Inc*., 69 F.3d 1235, 1241

20   (2d Cir. 1995)). As Senn was put on notice of her claims and was the decision-maker responsible

21   for the alleged discrimination, Plaintiff contends he should not be dismissed from the case because

22   doing so would undermine Title VII's remedial goals over technical pleading issues." *Id.*

23         Finally, Plaintiff contends she has alleged sufficient facts to state viable claims for sex,

24   national origin and race discrimination under Title VII and age discrimination under the ADEA.

25   *Id.* at 15-16. She concedes, however, that her claims under the EPA fail as a matter of law and

26   withdraws those claims, arguing that Defendants' Motion is therefore moot as to those claims.

27       **E.    Reply**

28         In their Reply brief, Defendants assert that the continuing violation doctrine does not make

the claims in her complaint timely because even the most recent failure to hire (alleged to have occurred in October 2021) occurred more than 300 days before Plaintiff filed her DFEH and EEOC charges. Reply at 2.

Defendants argue further that Plaintiff's reliance on the continuing violation doctrine is misplaced because she cannot meet two of the three required elements, that is, that the conduct was reasonably frequent and the conduct that occurred outside the limitations period "has not yet become permanent." *Id.* at 2 (citing *Jumaane v. City of Los Angeles,* 241 Cal.App.4th 1390, 1400-1405 (2015)). According to Defendants, the conduct alleged in the Complaint was not reasonably frequent because it occurred only four times over the course of six years. *Id.* at 3. As to "permanence," Defendants contend "[p]ermanence" in this context means that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to end the retaliation will be futile." *Id.* Defendants assert that "Plaintiff should have realized by the third alleged incident in January 2021 that further efforts to apply to the company or end discrimination would be in vain" and therefore, the conduct had reached permanence by that time. *Id.*

Moreover, Defendants argue, "[e]ven if Plaintiff is allowed to amend her Complaint to add incidents after October 2021, per her Opposition, the last incident of discrimination occurred on June 8, 2023." *Id.* at 3 n. 1. According to Defendants, "[i]f the first incident occurred in January 2015, it had certainly reached permanence by June 2023/the seventh incident." *Id.* Defendants also assert that they "did not have any jobs open in 2022 or 2023 to which Plaintiff applied (and Plaintiff does not claim they did) so there cannot be a continuing violation in this respect either." *Id.*

Defendants reject Plaintiff's argument that her allegations were sufficient to exhaust as to national origins discrimination, asserting that "Plaintiff's EEOC charge only states that her race is Chinese and that San Francisco Estuary hired Caucasians." *Id.* According to Defendants, "[t]hese statements are not enough to afford the EEOC the opportunity to investigate Plaintiff's national origin discrimination claim pursuant to Title VII before Plaintiff filed her lawsuit." *Id.* at 4.

Defendants also contend Plaintiff is incorrect with respect to her assertion that her claims

10

were exhausted as to Senn , asserting that "[c]ontrary to Plaintiff's statement in her Opposition, her intake form does not even list Mr. Senn as a Respondent." *Id.* Defendants also argue that Plaintiff's reliance on *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995) is misplaced "as that case deals with the test for determining when a parent company may be considered an employer of a subsidiary's employee" and does not support "Plaintiff's argument that naming San Francisco Estuary Institute in her administrative charges constitutes naming Mr. Senn." *Id.* Defendants reiterate their argument that Senn "should be dismissed regardless because Title VII and ADEA claims cannot be made against individuals." *Id.*

Defendants again argue that Plaintiff has not alleged sufficient facts to state a claim for discrimination based on sex, national origin or race under Title VII or for age discrimination under the ADEA. *Id.* at 4-6.

Finally, Defendants argue that the Court should not consider Plaintiff's declaration or the new facts referenced in her brief that fall outside of the allegations in the complaint. *Id.* at 7. Nor should the Court grant Plaintiff's request for judicial notice, Defendants contend. *Id.*

### III. ANALYSIS

#### A. Requests for Judicial Notice

Defendants request that the Court take judicial notice of Plaintiff's DFEH Charge and the EEOC notice of dual filing under Rule 201 of the Federal Rules of Evidence. *See* dkt. no. 9-1 ("Defendants' RJN"). Plaintiff does not oppose the request, which is GRANTED. *See Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 (N.D. Cal. 2013) (taking judicial notice of EEOC discrimination charge under Rule 201 of the Federal Rule of Evidence on the ground that it was a "public record[ ] whose accuracy is not in dispute").

The Court does not address Plaintiff's request for judicial notice because the documents attached thereto have no bearing on the Court's consideration of the issues addressed herein and the Court did not consider them in deciding the Motion.

#### B. EPA Claims

Plaintiff concedes that she cannot state a claim under the EPA and asks to withdraw them. Accordingly, the Court GRANTS the Motion as to those claims and dismisses them with

11

1  prejudice.

### C. Timeliness of Title VII and ADEA Claims

Plaintiff's remaining claims are asserted under Title VII and the ADEA. The Court finds that as currently pled, all of Plaintiffs' Title VII and ADEA claims are untimely.

Pursuant to 42 U.S.C. § 2000e-5(e)(1), a Title VII plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred" if it occurred in a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice and the employee initially filed a grievance with that agency. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). The ADEA has the same requirement. *See* 29 U.S.C. § 626(d)(1); *Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007). In the Ninth Circuit, a failure to hire claim accrues when the plaintiff knew or had reason to know of the actual injury, that is, when the plaintiff received notice they would not be hired or should have realized they had not been hired for the position. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). Thus, because Plaintiff filed her DFEH charge on September 2, 2022, her claims for failure to hire are timely only if she did not know or have reason to know that she had not been hired for the positions on which her claims are based until on or after November 6, 2021. Under these standards, Plaintiff has not alleged sufficient facts to give rise to a plausible inference that her Title VII and ADEA claims are timely.[3]

Claim One is based on Defendants' failure to hire her for the job opening posted by Defendants in January 2015. According to Plaintiff, she learned this position had been filled in April 2015. Compl. ¶ 16. Therefore, this claim is untimely.

Claim Two is based on Defendants' failure to hire her for the biogeochemist position for which she applied in June 2016, which was canceled. Plaintiff does not allege any specific facts as to when she became aware that that position was cancelled. However, she also does not allege any specific facts that would raise a plausible inference that she did not know or have reason to

---

[3] The Court's rulings on the timeliness of Plaintiff's claims are based on the assumption that Plaintiff's claims are valid but should not be construed as holding that Plaintiff has, in fact, stated valid claims.

12

know by November 2, 2021, more than five years later, that she had not been hired for this position. Therefore, this claim also is untimely.

Claim Three is based on Defendants' failure to accept her offer to conduct work on a volunteer basis and then hiring a "young female Caucasian" to perform the same work. The allegations in the Complaint, though not entirely clear, seem to suggest that Senn rejected Plaintiff's offer at the time she made it, in March 2016. *Id.* ¶¶ 17-18. In any event, she became aware that her offer had been rejected no later than January 2021, when she learned that someone else had been hired to perform the same work. *Id.* ¶ 20. Therefore, this claim also is untimely.

Claim Four is based on Defendants' failure to hire her for the project manager and senior scientist position advertised in January 2021. As to this position, Plaintiff again includes no specific allegation as to when she learned the position had been filled, but she does allege that at the time she applied she already believed she was being discriminated against and so she emailed Senn "to remind him that [her] expertise was useful for the Nutrients Projects and [to] ask[ ] him to support [her] application" but did not get an interview. *Id.* ¶ 21. Given the passage of at least eight months and the absence of any specific facts that would raise a plausible inference that she did not know or have reason to know by November 2, 2021 that she had not been hired for this position, the Court concludes that this claim also is untimely.

Claim Five is based on Defendants' failure to hire her for the environmental scientist position for which she applied on October 13, 2021. Here, again Plaintiff includes no specific allegation in the Complaint as to when she learned the position had been filled. However, she alleges in her EEOC Charge, of which the Court takes judicial notice, that Defendants' failure to hire occurred on or before October 16, 2021. RJN, Ex. B. Therefore, the Court concludes that this claim also is untimely.

Plaintiff attempts to establish that her claims are timely by invoking the continuing violation doctrine and describing in her opposition brief (supported by a Request for Judicial Notice with evidence attached) additional instances in which Defendants allegedly refused to hire her that occurred after November 6, 2021. The Supreme Court has held, however, that the continuing violation doctrine does not apply to discrimination claims based on discrete

13

discriminatory acts, such as failure to hire or promote. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and observing that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and "constitute[ ][ ] separate actionable 'unlawful employment practice[s].'"). Therefore, her attempt to avoid the untimeliness of her claims on that basis fails and all of the claims asserted in the Complaint are subject to dismissal on this basis.[4]

### D. Title VII and ADEA Claims Against Senn

Plaintiff's claims also fail to state a claim as to defendant Senn. It is well-established that "individual defendants cannot be held liable for damages under Title VII . . . and, because of the similarities in the Title VII and ADEA statutory schemes, [the same rule] is applicable to suits under the ADEA." *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993). Plaintiff is incorrect in her assertion that the Ninth Circuit has "recognized individual liability where the individual exercised significant control over Plaintiff's hiring, firing, or conditions of employment." Opposition at 13 (citing in *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003)). In fact, in the case Plaintiff cites, the Ninth Circuit states, "we have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees." 339 F.3d at 1179. Therefore, Plaintiff's Title VII and ADEA claims against Senn are not valid.

### E. Claims Asserting Sex Discrimination

In Claims One and Five, Plaintiff asserts sex discrimination as one of the grounds for her claims. Plaintiff did not, however, list sex discrimination in her DFEH charge, which refers only to discrimination based on age and race. *See* RJN, Ex. A. Therefore, the Court finds that it does not have subject matter jurisdiction over these claims.

A federal court has jurisdiction over Title VII and ADEA claims that are "reasonably related to the allegations of the EEOC charge." *Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268,

---

[4] The Court does not address the viability of any claims Plaintiff might be able to assert based on new facts contained in her brief that are not included in the operative complaint.

14

1   271 (9th Cir. 1981) (quoting *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th

2   Cir. 1973)). "In determining whether an allegation . . . is like or reasonably related to allegations

3   contained in a previous EEOC charge, the court inquires whether the original EEOC investigation

4   would have encompassed the additional charges." *Green v. Los Angeles Cnty. Superintendent of*

5   *Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989). EEOC charges are to be construed liberally. *Id.*

6   However, if a plaintiff asserts claims that the EEOC could not reasonably have been expected to

7   investigate pursuant to a charge, then those claims must be dismissed for lack of jurisdiction. *Shah*

8   *v. Mt. Zion Hospital and Medical Center*, 642 F.2d at 271.

9   Here, Plaintiff did not allege sex discrimination in her EEOC Charge, which also does not

10  include any specific allegations that would have caused the EEOC to conduct an investigation that

11  encompassed sex discrimination.  Contrary to Plaintiff's assertion in her Opposition brief, the

12  charge does *not* include allegations "that she was passed over for less qualified male candidates."

13  Opposition at 13. Rather, it states only that "[e]ach time the position was filled by an individual

14  significantly *younger and non-Asian (Caucasian).*"  Defendants' RJN, Ex. A (emphasis added).

15  Therefore, the Court finds that Plaintiff's Title VII and ADEA claims based on sex are not like or

16  reasonably related to the allegations in the EEOC Charge and that the Court does not have

17  jurisdiction over those claims.

18      **F.**    **Claims Asserting National Origin Discrimination Under Title VII**

19  Defendants also contend Plaintiff's claims for national origin discrimination (asserted in all

20  five of her claims) fail for lack of exhaustion.  Given Plaintiff's pro se status and the liberal

21  standard that governs the interpretation of EEOC charges, the Court finds that these claims were

22  adequately raised before the EEOC.

23  Although Plaintiff listed race but not national origin as the basis for her discrimination

24  claims in her EEOC Charge, her description of the facts refers both to her race ("Asian") and to

25  the fact that she is "Chinese."  Liberally construed, the latter appears to be a reference to

26  Plaintiff's national origin and therefore, the EEOC's investigation would likely have encompassed

27  national origin discrimination as well as race discrimination. *See Hampe v. California, Dep't of*

28  *Corr.*, No. S-98-2466 DFL PAN, 2000 WL 1585263, at *3 (E.D. Cal. July 31, 2000), aff'd, 21 F.

1   App'x 744 (9th Cir. 2001) (recognizing that in the context of Title VII exhaustion, "race and
2   national origin may overlap in some cases"); *U.S. Equal Emp. Opportunity Comm'n v. Phase 2*
3   *Invs. Inc.*, 310 F. Supp. 3d 550, 567 (D. Md. 2018) (finding that where plaintiff's EEOC charge
4   alleged national origin discrimination and further indicated that discrimination was because
5   plaintiff was "Hispanic" this "put race discrimination on the table" for the purposes of exhaustion
6   even though the plaintiff had not explicitly alleged race discrimination in the charge); *Prewitt v.*
7   *Cont'l Auto.*, 927 F. Supp. 2d 435, 449 (W.D. Tex. 2013) (holding that Title VII race
8   discrimination claim was exhausted even though plaintiff had only alleged national origin
9   discrimination in EEOC charge where allegations indicated that plaintiff believed he had been
10  discriminated on the basis that he was not Hispanic and observing that EEOC charges must be
11  construed liberally, especially when drafted by a pro se plaintiff).

Therefore, the Court DENIES the Motion to the extent it seeks dismissal of Plaintiff's national origin discrimination claims for failure to exhaust.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED to the extent it seeks dismissal of Plaintiff's Title VII and ADEA national origin discrimination claims based on failure to exhaust administrative remedies. The Motion is GRANTED as follows. First, all of Plaintiff's claims are dismissed to the extent they are asserted under the EPA. As amendment would be futile as to these claims (and Plaintiff does not seek to amend her EPA claims), these claims are dismissed with prejudice and without leave to amend. Second, all of Plaintiff's claims are dismissed with prejudice as to Defendant Senn as neither Title VII nor the ADEA allows individual employees to be held liable. Senn shall be terminated as a defendant in this case. Third, to the extent that Claims One and Five assert discrimination based on sex under Title VII and the ADEA, those claims are dismissed with prejudice for lack of subject matter jurisdiction. Plaintiff cannot cure these claims by amendment and therefore she is not permitted to amend as to these claims.

The remaining claims – all five of Plaintiff's claims to the extent that they are based on allegations of discrimination under Title VII and the ADEA based on age, race and national origin – are untimely and therefore are dismissed on that basis. Further, as to Claims One through Three,

the facts alleged in the Complaint establish that those claims accrued outside of the applicable limitations period and therefore cannot be cured by amendment. As to Claims Four and Five, it is less clear when Plaintiff knew or should have known she had not been hired for the positions and therefore, Plaintiff may amend to allege facts establishing that those claims, to the extent they assert claims for age, race, and national origin discrimination under Title VII and the ADEA, were timely.[5]

Plaintiff will also be permitted to amend her complaint to add the additional acts of alleged discrimination described in her Opposition papers, so long as she does not assert any Title VII or ADEA claim based on sex discrimination and has a good faith basis to believe she has exhausted her administrative remedies as to any claims she asserts based on the alleged conduct. The Court further limits Plaintiff's right to amend as follows: Plaintiff *may not* disclose the parties' confidential settlement negotiations or assert any claims based on conduct that occurred during settlement negotiations, including any demands that Plaintiff may have made of Defendants in that context. *See* Fed. R. Evid. 408 (providing that evidence of "conduct or a statement made during compromise negotiations about the claim" "is not admissible--on behalf of any party--either to prove or disprove the validity . . . of a disputed claim.").

Plaintiff's amended complaint shall be filed by **February 16, 2024**. Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance. The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470 S on the 4th floor at 1301 Clay Street, Oakland, CA 94612. Appointments can be made by calling (415) 782-8982 or emailing federalprobonoproject@sfbar.org. Lawyers at the Legal Help Center can provide basic

---

[5] The Court declines to address Defendants' challenges to Plaintiff's claims under Rule 12(b)(6) as Plaintiff has not yet asserted any claims as to which she has exhausted her administrative remedies.

assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: December 22, 2023

_____
JOSEPH C. SPERO
United States Magistrate Judge