1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

SHUFEN MA,

Plaintiff,

Case No.  23-cv-05060-JCS

8

v.

9

10

SAN FRANCISCO ESTUARY
INSTITUTE,

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS FIRST AMENDED
COMPLAINT AND DISMISSING
FIRST AMENDED COMPLAINT WITH
LEAVE TO AMEND**

11

Defendant.

12

Re: Dkt. No. 17

13

## I.       INTRODUCTION

14

Plaintiff Shufen Ma, who is proceeding pro se, is a 61-year-old female immigrant from

15

China who has a scientific background in nutrients biogeochemistry and issues related to water

16

quality.  She brings employment discrimination claims against the San Francisco Estuary Institute

17

("SFEI") based on its failure to hire her as an environmental scientist over a period of several

18

years.  The Court previously dismissed Plaintiff's complaint with leave to amend as to some

19

claims and Plaintiff has filed an amended complaint.  Presently before the Court is Defendant's

20

Motion to Dismiss and Motion to Strike Portions of Plaintiff's First Amended Complaint

21

("Motion").  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

22

## II.      PROCEDURAL BACKGROUND

23

### A.      The Original Complaint and the Court's December 22, 2023 Order

24

In her original complaint, Plaintiff named as defendants SFEI and David Senn, who is

25

alleged to be the Co-Director of SFEI's Water Program and lead scientist on its Nutrients Project,

26

alleging that a series of job applications she submitted for positions with SFEI were rejected based

27

28

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28
U.S.C. § 636(c).

1   on her age, sex, race, and national origin.  In particular, she  asserted the following five

2   discrimination claims based on age, sex, race, and national origin, each of which alleged violations

3   of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act

4   ("ADEA"), and the Equal Pay Act ("EPA"):   1) employment discrimination based on Defendants'

5   failure to hire her for a job opening posted by Defendants in January 2015 (Claim One); 2)

6   employment discrimination based Defendants' failure to hire her for a biogeochemist position for

7   which she applied in June 2016, which was canceled (Claim Two); 3) employment discrimination

8   based on Defendants' failure to  accept her offer to conduct work on a volunteer basis and then

9   hiring a "young female Caucasian" to perform the same work (Claim Three);   4) employment

10   discrimination based on failure to hire her for the project manager and senior scientist position

11   advertised in January 2021 (Claim Four); and 5) employment discrimination based on failure to

12   hire her for the environmental scientist position for which she applied in October 2021 (Claim

13   Five).

14          Defendants brought a motion to dismiss, which the Court granted in part and denied in

15   part. *See* Order Granting in Part and Denying in Part Motion to Dismiss, filed December 22, 2023

16   ("December 22, 2023 Order").  The Court dismissed all claims against defendant David Senn and

17   all of Plaintiff's EPA claims with prejudice.  *Id.* at 16-17.  The Court further found that Plaintiff

18   failed to exhaust her claims under Title VII and the ADEA based on sex discrimination and

19   therefore, the Court did not have subject matter jurisdiction over those claims, which were also

20   dismissed with prejudice.  *Id.* at 14, 16.  On the other hand, the Court found that Plaintiff had

21   exhausted her claims based on national origin discrimination.  *Id.* at 15-16.  (Defendants did not

22   argue that Plaintiff's race and age discrimination claims were not adequately exhausted because

23   those were the two grounds listed in Plaintiff's administrative claim filed with the California Civil

24   Rights Department ("CRD").)[2]  However, the Court found that all of Plaintiff's remaining claims

25   were untimely on the basis that she had failed to allege facts showing that her administrative

26

27   _____

28   [2] For a discussion of Plaintiff's administrative complaint, of which the Court has taken judicial
    notice, the reader is referred to the Court's December 22, 2023 Order at 4-5, 14-16. The
    administrative complaint can be found at dkt. no. 9-1.

United States District Court
Northern District of California

complaint was filed within 300 days of the date when the claims accrued, as required. *Id.* at 12-14, 15-16. The Court further found that this shortcoming could not be cured as to Claims One through Three but that Plaintiff might be able to amend her complaint to establish that Claims Four and Five were timely. *Id.* at 16-17. Therefore, the Court granted leave to amend as to Claims Four and Five. *Id.*

The Court also permitted Plaintiff to assert additional claims based on acts of alleged discrimination described in her opposition papers that were not included in her complaint but cautioned her that she was not permitted to assert any new Title VII or ADEA claim based on sex discrimination and that she could only assert claims as to which she had a good faith basis to believe she had exhausted her administrative remedies. *Id.* at 17. The Court also limited Plaintiff's right to amend by instructing Plaintiff that she was not permitted to disclose in her amended complaint "the parties' confidential settlement negotiations or assert any claims based on conduct that occurred during settlement negotiations, including any demands that Plaintiff may have made of Defendants in that context." *Id.* (citing Fed. R. Evid. 408).

**B.    Allegations in the First Amended Complaint**

In her First Amended Complaint ("FAC"), Plaintiff asserts Title VII and ADEA discrimination claims based on age, race and national origin in connection with Defendant's failure to hire her for positions she applied for in January 2021 (Claim One; formerly, Claim Four) and October 2021 (Claim Two; formerly, Claim Five).   FAC ¶¶ 44-45.  Plaintiff also asserts four new claims, all alleging age, race and national origin discrimination under Title VII and the ADEA, based on the following conduct: 1) failure to respond to a September 5, 2022 email to Ms. Eileen White, a board member of SFEI, which White forwarded to David Senn, offering to "do anything to help", which Plaintiff alleges was a "form of job inquiry[,]" FAC ¶¶ 46-50 (Claim Three);  2) failure to respond after Plaintiff, on February 20, 2023, asked the CRD representative assigned to handle her administrative complaint to "tell Defendant that Plaintiff would do anything to help investigate harmful algal blooms and fish kills and wouldn't mind volunteering[,]" FAC ¶¶ 51-52 (Claim Four); 3) refusal to consider Plaintiff for a job with SFEI between September 2022 and June 2023 even though Plaintiff learned at the mediation that the position for which she

1    applied in January 2021 was only temporarily filled by Lisa Hunt and opened up again in March

2    2022; FAC ¶¶ 53-54 (Claim Five); and 4) refusal to discuss job opportunities at the June 2023

3    mediation even though Defendant advertised a nutrients scientist position a month and a half later

4    and the position was likely open at the time of the mediation, FAC ¶ 55 (Claim Six).

### C.   The Motion

6    Defendant asserts in the Motion that all of the claims in the FAC should be dismissed with

7    prejudice.  First, it contends that Claims One and Two are time-barred because Plaintiff filed her

8    administrative complaint more than 300 days after these claims accrued.  Second, it argues that

9    Claims Three through Six must be dismissed because Plaintiff failed to satisfy the administrative

10   exhaustion requirements for these claims.  Third, Defendant argues that all of the claims in the

11   FAC are insufficiently pled under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

12   Defendant also asks the Court to strike twenty-two phrases or entire paragraphs of the FAC under

13   Rule 12(f) of the Federal Rules of Civil Procedure on one of two grounds.  First, it argues that

14   allegations about conduct that occurred outside of the limitations period should be stricken on the

15   basis that they are irrelevant.  Second, it argues that the Court should strike material that discloses

16   information about the parties' mediation in connection with Plaintiff's administrative complaint.

### III.   MOTION TO STRIKE

### A.   Legal Standards Under Rule 12(f)

19   A party may move the court to "strike from a pleading an insufficient defense or any

20   redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of

21   a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from

22   litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v.*

23   *Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). "Motions to strike are

24   generally regarded with disfavor because of the limited importance of pleading in federal practice,

25   and because they are often used as a delaying tactic." *Mag Instrument, Inc. v. JS Prods., Inc*., 595

26   F. Supp. 2d 1102, 1106 (C.D. Cal. 2008). "Ultimately, whether to grant a motion to strike lies

27   within the sound discretion of the district court." *Nguyen v. CTS Elecs. Mfg. Sols. Inc*., No. 13-

28   CV-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Whittlestone*, 618 F.3d at

United States District Court
Northern District of California

973).

### B.    Contentions of the Parties

#### 1.  Motion

In the Motion, Defendant asks the Court to strike the following allegations in Plaintiff's FAC:

1. ¶ 6, stating, "since 2014";

2. ¶¶ 14-20 in their entirety;

3. ¶ 23, lines 10-22 (ending with "to raise his own research profile");

4. ¶ 25, stating, "(June 8, 2023, see later paragraphs)";

5. ¶ 29, stating, "From 2015 to 2021, Plaintiff has applied four times for the environmental scientist positions but never got an interview.";

6. ¶¶ 32-33, in their entirety;

7. ¶ 34, stating, "Plaintiff also learned from this document on June 8, 2023, that Lisa Hunt was hired as the Program Manager/Senior Scientist."

8. ¶ 35, in its entirety;

9. ¶ 37, stating, "and June, 2023.";

10. ¶ 38, starting with, "the second example is that the document 'Shufen v. SF Estuary – Mediation brief for sharing with Complainant," and ending with "as a remote employee in the future'";

11. ¶ 39, stating, "on July 27, 2023, only one and a half month (sic) after the mediation meeting failed on June 8, 2023, when Plaintiff was told that the Program Manager/Senior Scientist position was filled by Lisa Hunt and no other position for her," "The funds for this position should have been planned much earlier than June 8, 2023," and "Plaintiff has been rejected multiple times from June 2015."

12. ¶ 41, in its entirety;

13. ¶ 44, stating, "Plaintiff felt she was discriminated against because David Senn, the lead scientist and Co-Director, stole Plaintiff's research ideas that Plaintiff emailed him in 2016 and hired a young Caucasian female to do the project that Plaintiff proposed to do

United States District Court
Northern District of California

voluntarily but was declined by David Senn that they didn't have the funds and lab resources," "Plaintiff learned on June 8, 2023 in the CRD mediation meeting from the document, 'Shufen v. SF Estuary-Mediation Brief for sharing with Complainant' that Defendant hired Lisa Hunt, a mixed-race female as the Program Manager/Senior Scientist," and "Plaintiff learned that she was harmed on June 8, 2023 so her CRD claim was filed timely.";

14. ¶ 45, stating, "Plaintiff learned from the document 'Shufen Ma v. SF Estuary-Mediation Brief for Sharing with Complainant,' on June 8, 2023 that a young male Caucasian was hired who studied bivalves," and "Plaintiff learned that she was harmed on June 8, 2023 so her CRD claim was filed timely.";

15. ¶ 47, stating, "From 2015 to 2021, Plaintiff applied four times for the environmental scientist position but never got an interview. David Senn hired a young Caucasian female to do denitrification, which was originally Plaintiff's idea and Plaintiff offered to do it voluntarily but was declined by David Senn that they didn't have the funds and lab responses.";

16. ¶ 49, stating, "Also funds were available because David Senn offered a job to someone in October 2022 who declined the offer but David Senn has still wanted to hire this person as a remote employee in the future (from document 'Shufen v. Sf Estuary-Mediation brief for sharing with Complainant.'";

17. ¶ 50, stating "and June 8, 2023.";

18. ¶ 51, stating, "Defendant had funds available because David Senn offered a job to someone in October 2022 who declined the offer but David Senn has still wanted to hire this person as a remote employee in the future (from document 'Shufen v. SF Estuary-Mediation Brief for sharing with Complainant.'";

19. ¶ 52, stating, "and June 8, 2023.";

20. ¶ 53, in its entirety;

21. ¶ 54, stating, "on June 8, 2023"; and

22. ¶ 55, in its entirety

Motion at 1-2.

Defendant offers two justifications for striking this material. First, it asserts that "Plaintiff has improperly included allegations in her First Amended Complaint regarding specific privileged communications made in the course of mediation[,]" which Defendant contends violates the Court's December 22, 2023 Order and Rule 408 of the Federal Rules of Evidence. *Id.* at 20 (citing FAC ¶¶ 25, 32, 33, 34, 35, 37, 38, 39, 41, 44, 45, 49, 50, 51, 52, 53, 54, 55). Defendant also contends this material is privileged under federal common law, citing *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F.Supp.2d 1164, 1180-81 (C.D. Cal. 1998). *Id.*

Second, Defendant argues that because the Court found in its December 22, 2023 Order that some of Plaintiff's claims were time-barred and that the continuing violation doctrine could not be used to avoid the statute of limitations as to those claims, the allegations in the FAC relating to Plaintiff's job application and/or inquiries in January 2015, June 2016, and March 2016 are redundant and irrelevant and therefore should be stricken. *Id.* at 21 (citing FAC ¶¶ 6, 14-20, 23, 29, 39, 44, 47).[3]

### 2. Opposition

Plaintiff rejects Defendant's arguments in support of its motion to strike. She argues that the allegations relating to her past job applications and her interactions with David Senn provide "crucial information, [and are] an integral part of [her] experience of being discriminated by Defendant due to her age, race, and national origin." Opposition at 28. She also represents that she did not intend to violate the Court's order in disclosing information from the mediation brief she received from Defendant in connection with the mediation conducted by the CRD. *Id.* at 21-24. She explains that she believed Defendant had authorized the disclosure of information in the mediation brief, citing the allegations in paragraph 32 of the FAC[4] and the parties' Agreement to

---

[3] Although Defendant asks the Court to strike the entirety of only some of the paragraphs at issue, identifying only excerpts of other paragraphs it seeks to strike, the citations it has offered in connection with the two rationales that is relies on in support of striking this material refer only generally to paragraph numbers and do not delineate the specific material within the paragraph that falls within each of the two categories. In ruling on Defendant's requests, the Court makes its own determination as to which material falls into each category.

[4] Paragraph 32 states as follows:

1   Mediate and Confidentiality Agreement.  *Id.*  at 21-22. Plaintiff argues further that "Defendant

2   cannot restrict or prevent Plaintiff from disclosing factual information related to Defendant's act

3   of discrimination" and that such a prohibition is inconsistent with California's "Silenced No More

4   Act", which went into effect on January 1, 2022.  *Id.* at 22-23.

### 3.  Reply

6        Defendant reiterates the arguments in its Motion and further contends it did not authorize

7   disclosure of the contents of its mediation brief.  Reply at 7-9.  Defendant asks the Court to take

8   judicial notice of the Agreement to Mediate and Confidentiality Agreement, which expressly

9   states that "[m]ediation is a confidential process subject to California Evidence Code sections

10  1115 to 1129," and that "the following will be kept confidential by . . . the parties. . . even after the

11  mediation ends: a. any mediation briefs, written statements or other documents relating to the

12  mediation that are created for or during the mediation; b. substantive statements and positions

13  relating to the mediation that are communicated orally or in writing by the parties . . . and/or the

14  mediator."  Reply at 7 (quoting Reply RJN, Ex. C). Defendant also states that the mediation brief

15  Plaintiff was given was redacted (as alleged in paragraph 32 of the FAC) and represents that

16  "names of the applicants and employees" were redacted, meaning that "Plaintiff learned the

17  identity of the applicants from the mediator during mediation, which is subject to the privilege."

18  _____

19        On June 8, 2023, CRD's Mr. Thomas Bennett held a mediation meeting between Plaintiff
    and Defendant at 10 am. Mr. Bennett emailed Plaintiff a copy of the document "Shufen v.
20  SF Estuary- Mediation Brief for sharing with Complainant" from Defendant at 10.04 am,
    at the start of the meeting, and indicated that Defendant wanted to share this document
21  with Plaintiff. This document doesn't include anything from the mediation meeting. In this
    document, a sentence is indicated to Mr. Bennett: "This redacted version may be shared
22  with Claimant Shufen Ma ("Dr. Ma")". After the mediation failed, Mr. Bennett told
    Plaintiff that Plaintiff can keep this document and show it to her lawyer. Ms. Blackwell at
23  CRD has this document too, possibly because this is Defendant's response to CRD about
    Plaintiff's claim. Therefore, Plaintiff believes that if she should show this document to her
24  lawyer then she should show it to The Honorable Judge. The main point of the document
    "Shufen v. SF Estuary- Mediation Brief for sharing with Complainant" is that Plaintiff
25  didn't get an interview opportunity because Plaintiff has never been qualified for any of the
    positions that she applied for. Plaintiff completely disagree that she has never been
26  qualified. Plaintiff believes that she has been the most qualified applicant for the Nutrients
    Project based on her qualification. David Senn even stole Plaintiff's scientific ideas to raise
27  his own research profile but Defendant shamelessly claimed that Plaintiff was not
    qualified.
28  FAC ¶ 32.

United States District Court
Northern District of California

*Id.* at 8. Similarly, Defendant contends, "Plaintiff's Sixth claim is based solely on what she learned during mediation." *Id.* (citing FAC at ¶ 55).[5]

## C. Discussion

To the extent that Defendant asks the Court to strike allegations related to its alleged failure to hire her in 2015 and 2016, that request is denied. Defendant cites no case authority in support of this request. Furthermore, the Supreme Court has recognized that prior acts of discrimination that fall outside the limitations period may be used as background evidence in support of a timely discrimination claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that Title VII does not prevent a plaintiff from using time-barred acts as background evidence in support of a timely discrimination claim). Here, Plaintiff's allegations relating to her past interactions with SFEI and David Senn may be relevant to discriminatory intent or when Plaintiff's claims accrued (discussed further below), among other things.

---

[5] Paragraph 55 states:

> On June 8, 2023, Defendant gave Plaintiff the document "Shufen v. SF Estuary- Mediation Brief for sharing with Complainant" through CRD's Mr. Bennett. The main point of the document is that Plaintiff wasn't get an interview opportunity because Plaintiff has never been qualified for any of the positions that she applied for, and Defendant has funds available whenever they want to hire someone of their choice because David Senn offered a job to someone in October 2022 who declined the offer but David Senn has still wanted to hire this person as a remote employee in the future. Plaintiff completely disagree that she has never been qualified. Plaintiff believes that she has been the most qualified applicant for the Nutrients Project based on her qualification. David Senn even stole Plaintiff's scientific ideas to raise his own research profile. Defendant refused to discuss working opportunity with Plaintiff on June 8 2023 was discrimination against Plaintiff. On July 27, 2023, only one and a half month after the mediation meeting failed on June 8, 2023, Defendant had an open position in the Nutrients Project for a bachelor's degree candidate on indeed.com. The funds for this position should have been planned much earlier than June 8, 2023, probably even earlier than February, 2023. This was just the way Defendant used to exclude Plaintiff. As a very experienced nutrients biogeochemistry scientist, Plaintiff has been rejected numerous times from January 2015 to June 2023, but a candidate with a bachelor's degree would be more qualified than Plaintiff to solve harmful algal blooms and fish kills problems? It only demonstrates that Defendant would do anything to discriminate Plaintiff to prevent her from doing work to protect the environments. It demonstrates that Defendant has had funds available in 2022 and 2023, and at any time when Defendant wants to hire people of their choice. Defendant discriminated against Plaintiff's age, race and national origin. Plaintiff was harmed professionally, financially, and physically. Plaintiff reported this case to CRD on June 8, 2023, so Plaintiff has exhausted administrative remedies.

FAC ¶ 55.

United States District Court
Northern District of California

Therefore, the allegations relating to conduct that occurred outside of the limitations period are not immaterial under Rule 12(f) and it is inappropriate to strike those allegations at the pleading stage. *See Seung-Whan Choi v. Bd. of Trustees of Univ. of Illinois*, No. 16 C 11627, 2017 WL 3278823, at *7 (N.D. Ill. Aug. 2, 2017) (declining to strike allegations about conduct that occurred outside of the limitations period in employment discrimination case).

On the other hand, the Court finds that Plaintiff's allegations disclosing facts she learned from Defendant's mediation brief and during the mediation, as well as conduct that occurred in the mediation, must be stricken because they violate the Court's Order and Rule 408 of the Federal Rules of Evidence.[6]  While there is some disagreement among district courts in the Ninth Circuit, the weight of authority holds that even though Rule 408 is an evidentiary rule,  a motion to strike under Rule 12(f) is proper where allegations in a complaint disclose communications that would be inadmissible under Rule 408. *See Scott v. PacifiCorp*, No. 1:22-CV-00174-AA, 2022 WL 2452281, at *1 (D. Or. July 6, 2022) (collecting cases); *Stewart v. Wachowski*, No. CV03-2873 MMMVBKX, 2004 WL 5618386, at *2 (C.D. Cal. Sept. 28, 2004)  (holding that "[c]ourts have used Rule 12(f) to strike allegations from complaints that detail settlement negotiations within the ambit of Rule 408" and citing cases).  In *Jones v. Metro. Life Ins. Co*., the court explained that "under Federal Rule of Civil Procedure 12(f), courts have granted motions to strike references to settlement negotiations even at the pleadings stage of a case, on the basis that the contents of settlement discussions would otherwise be inadmissible under Federal Rule of Evidence 408 and are therefore immaterial and potentially prejudicial."  No. C-08-03971-JW DMR, 2010 WL 4055928, at *14 (N.D. Cal. Oct. 15, 2010) (citation omitted).  The Court finds the reasoning of these cases persuasive and therefore concludes that a Rule 12(f) motion is a proper vehicle to

---

[6] The Court does not rely on the federal mediation privilege found to exist in *Folb v. Motion Picture Indus. Pension & Health Plans,* 16 F.Supp.2d 1164, 1180-81 (C.D. Cal. 1998), cited by Defendant, or address whether that privilege applies under the circumstances of this case.  As one court has observed, "the cases that have followed *Folb* have involved the same context [as in *Folb*] (i.e., third party attempts to discover the mediation positions of their adversaries in other cases)[,]" and the *Folb* court itself limited the mediation privilege to the specific facts of that case. *See Molina v. Lexmark Int'l, Inc.*, No. CV0804796MMMFMX, 2008 WL 4447678, at *8 (C.D. Cal. Sept. 30, 2008).  As this case does not involve a scenario similar to the one in *Folb*, it is not clear that the mediation privilege found in that case applies here.

challenge allegations that disclose communications that are inadmissible under Rule 408.

Rule 408 provides as follows:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

F.R.Evid. 408.

Here, the majority of the allegations Defendant challenges on this ground are based on information Plaintiff obtained from Defendant's mediation brief (or possibly directly from the mediator) and therefore fall within the ambit of Rule 408(a)(2). Furthermore, Plaintiff uses this information to establish the validity of her claims and as such, inclusion of these facts in the FAC is improper under subsection (a). Therefore, the Court concludes that this material (described further below) must be stricken.

The Court rejects Plaintiff's assertion that Rule 408 cannot prohibit her from disclosing facts about what occurred outside of the mediation simply because they were contained in a mediation brief, though that is not a frivolous argument. Indeed, courts – and Congress – have struggled with this question. In *My Mavens, LLC v. Grubhub, Inc*., a district court in the Southern District of New York was faced with a similar argument where a plaintiff amended its complaint to include facts that it had learned from a confidential settlement communication (though in that case the plaintiff did not identify the source of the information in the amended complaint) and the defendant brought a motion to strike. No. 20 CIV. 4657 (PGG), 2023 WL 5237519, at *11-12 (S.D.N.Y. Aug. 14, 2023).

The court in *My Mavens, LLC v. Grubhub, Inc* considered the history and purpose of Rule

11

408 to determine whether it applied to facts disclosed in settlement negotiations.  In particular, it examined the history relating to subsection (a)(2) of Rule of 408, prohibiting the use of "statements" made in settlement negotiations, explaining that this provision expanded the common law rule and was the subject of significant debate in Congress:

> The Advisory Committee's note to Rule 408 indicates that the drafters intended that the Rule expand the scope of the common law exclusionary rule, which generally applied only to settlement offers, and not to statements made during settlement negotiations:
>
>> The practical value of the common law rule has been greatly diminished by its inapplicability to admissions of fact, even though made in the course of compromise negotiations, unless hypothetical, stated to be "without prejudice," or so connected with the offer as to be inseparable from it. An inevitable effect is to inhibit freedom of communication with respect to compromise, even among lawyers. Another effect is the generation of controversy over whether a given statement falls within or without the protected area. These considerations account for the expansion of the rule herewith to include evidence of conduct or statements made in compromise negotiations, as well as the offer or completed compromise itself.
>
> Fed. R. Evid. 408, 1975 Advisory Committee Note (citation omitted).
>
> The legislative history of Rule 408(a)(2) – as set forth in the notes accompanying the Rule – indicates that Congress placed great importance on this subsection, because of its ramifications for settlement. After the Supreme Court proposed the initial version of the Rule, the House Judiciary Committee initially deleted the sentence referring to "conduct or a statement made during compromise negotiations," out of concern that it would hamper government investigations and enforcement actions by permitting targets to exclude damaging evidence from trial by first sharing it with the government during an investigation. See Notes of Committee on the Judiciary, House Report No. 93–650. The Senate Judiciary Committee rejected this change:
>
>> The House amended the rule and would continue to make evidence of facts disclosed during compromise negotiations admissible. It thus reverted to the traditional rule.... The real impact of this amendment, however, is to deprive the rule of much of its salutary effect. The exception for factual admissions was believed by the Advisory Committee to hamper free communication between parties and thus to constitute an unjustifiable restraint upon efforts to negotiate settlements – the encouragement of which is the purpose of the rule.
>
> Notes of Committee on the Judiciary, Senate Report No. 93-1277. Accordingly, the Senate restored the language excluding evidence of conduct or statements made during compromise negotiations, and

addressed the House's concern by adding an amendment stating that "the rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." The House accepted this approach. See Notes of Conference Committee, House Report No. 93–1597. Thus, the Rule as originally enacted in 1975 provided, as Rule 408(a)(2) does today, that "[e]vidence of conduct or statemen[ts] made in compromise negotiations is ... not admissible." PL 93-595, Jan. 2, 1975, 88 Stat 1926.

The Senate Judiciary Committee's amendment providing that the Rule "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations" was deleted in 2006. The Advisory Committee has stated, however, that the sentence was merely "deleted as superfluous," and that "even without the sentence, the Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations." Fed. R. Evid. 408 Committee Notes on Rules – 2006 Amendment.

*Id.* at *13-14.

The court went on to conclude that Rule 408 precluded the plaintiff from using facts gleaned from settlement communication in its amended complaint, reasoning as follows:

District courts in this Circuit have . . . consistently granted motions to strike portions of complaints that refer to settlement offers or statements made in the course of settlement negotiations, particularly where the statements are described as such. . . . [citing cases]. Some courts in this Circuit, however, have denied motions to strike allegations premised on facts that a party learned about during settlement negotiations [citing cases]. The cases denying motions to strike have relied in large part on the Advisory Committee's statement that Rule 408 "cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations." Fed. R. Evid. 408 Committee Notes on Rules – 2006 Amendment[.] . . . Rule 408 embodies the "promotion of the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408, Advisory Committee Note. And, as the legislative history of Rule 408 demonstrates, the Rule's reference to "conduct or a statement made during compromise negotiations," Fed. R. Evid. 408(a)(2), is necessary for the achievement of that policy aim. Indeed, the Senate amended the House version of the Rule in order to preserve what it regarded as vital protection for conduct and statements associated with settlement negotiations. . . . The Advisory Committee note concerning "pre-existing information" does not shield the allegations here from a motion to strike. While the note provides that pre-existing evidence may come to light during discovery and may be admissible at trial, that does not mean that [plaintiff] may use [defendant's] settlement communication to salvage its otherwise insufficient claims against [defendant]. If a party could evade Rule 408 and the "fundamental policy" barring the use of settlement communications simply by not disclosing that the information at issue

13

1   came from a settlement communication, Rule 408(a)(2)'s prohibition
2   against the use of "conduct or a statement made during compromise
    negotiations" would be a dead letter.

3   *Id.* at *15-17.

4   The undersigned finds the reasoning in *My Mavens* to be persuasive and therefore strikes

5   allegations in the FAC that Plaintiff bases on Defendant's statements or conduct in the mediation,[7]

6   as follows: FAC ¶ 25, p. 12 line 25 ("June 8, 2023, see later paragraphs"); ¶ 32, p. 15 lines 4-1

7   (beginning with, "The main point")[8];  ¶ 33 (all); ¶ 34 p. 15 lines 23-26 ("Plaintiff also learned

8   from this document on June 8, 2023, that Lisa Hunt was hired as the Program Manager/Senior

9   Scientist. Lisa Hunt's LinkedIn profile shows that she worked from Mar 2021 - Mar 2022 at

10  Defendant's institute.");[9] ¶ 35, p. 16 lines 8-12 ("The document 'Shufen v. SF Estuary- Mediation

11  Brief for sharing with Complainant' that Plaintiff received on June 8, 2023, also shows that

12  another young male Caucasian who studied bivalves but without nutrients biogeochemistry,

13  harmful algal blooms and fish kills experience was hired for sensor technology. Therefore, June 8,

---

[7] The Court does not rule on Defendant's request for judicial notice of the parties' Agreement to Mediate and Confidentiality Agreement, Reply RJN, Ex. C. The allegations in the FAC ¶ 32 are insufficient to establish that Defendant authorized disclosure of the information in the mediation brief (though Plaintiff, who is not an attorney, may have had a good faith belief that it did) and therefore, the normal rules governing Rule 408 apply.  The Court need not address whether the confidentiality agreement between the parties might supply an additional basis for striking the material challenged by Defendant.

[8] Defendant asks the Court to strike the entirety of paragraph 32.  The Court declines that request because the first half of that paragraph, describing the basis for Plaintiff's belief that she was authorized to disclose the contents of Defendant's mediation brief, is not offered in support of a disputed claim but instead, to establish that Plaintiff's disclosures were not in violation of the Court's order and Rule 408.  Therefore, these allegations are outside of the ambit of Rule 408 and do not violate the Court's order.

[9] Defendant does *not* ask the Court to strike the remainder of paragraph 34, stating:

A search of Lisa Hunt on Defendant institute's website shows a webpage about a pesticides project with Lisa Hunt as one of the contributors, but her name was inactive. Lisa Hunt may have management skills, but her work was focused on pesticides. Pesticides and nutrients biogeochemistry are two very different research fields. How could Lisa Hunt manage the Nutrients Project without nutrients biogeochemistry and harmful algal bloom experience? If Lisa Hunt was hired as the Program Manager/Senior Scientist in the Nutrients Project in March 2021, why her work was with people in pesticides group? No wonder Defendant had no idea why harmful algal blooms and fish kills occurred because they didn't hire the right scientists. The worst is that the opportunities to prevent the environmental disasters were lost.

FAC ¶ 34 (partial).

1   2023 was the date that Plaintiff learned that she was harmed for her October, 2021

2   application.")[10];  ¶ 37, line 15 ("and June 2023"); ¶ 38 p. 17 line 21 to p. 18 line 8 (starting with

3   "The second example"); ¶ 39, p. 18 lines 10-12 ("On July 27, 2023, only one and a half month

4   after the mediation meeting failed on June 8, 2023, when Plaintiff was told that the Program

5   Manager/Senior Scientist position was filled by Lisa Hunt and no other position for her,"), lines

6   14-15 ("The funds for this position should have been planned much earlier than June 8, 2023,")[11];

7   ¶ 41 (all); ¶ 44 p. 20 lines 26-28 ("Plaintiff learned on June 8, 2023 in the CRD mediation meeting

8   from the document 'Shufen v. SF Estuary- Mediation Brief for sharing with Complainant' that

9   Defendant hired Lisa Hunt, a mixed-race female as the Program Manager/Senior Scientist.") and

10  p. 21 lines 12-14 ("Plaintiff learned that she was harmed on June, 8, 2023 so her CRD claim was

11  filed timely. Plaintiff reported this case to CRD; therefore, Plaintiff has exhausted administrative

12  remedies.")[12]; ¶ 45 p. 21 lines 25-27 ("Plaintiff learned from the document 'Shufen v. SF Estuary-

13  Mediation Brief for sharing with Complainant' on June 8, 2023 that a young male Caucasian was

14  hired who studied bivalves.") and p. 22 lines 6-7 ("Plaintiff learned that she was harmed on June,

15  8, 2023 so her CRD claim was filed timely."); ¶ 49 p.23 lines 18-20 ("Also, funds were available

16  because David Senn offered a job to someone in October 2022 who declined the offer but David

17  Senn has still wanted to hire this person as a remote employee in the future (from document

18  'Shufen v. SF Estuary- Mediation Brief for sharing with Complainant')".); ¶ 50 p. 24 line 1 ("and

19  June 8, 2023"); ¶ 51 p. 24 lines 10-13 ("Defendant had funds available because David Senn

20  offered a job to someone in October 2022 who declined the offer but David Senn has still wanted

21  to hire this person as a remote employee in the future (from document 'Shufen v. SF Estuary-

---

[10] Defendant requests that the Court strike paragraph 35 in its entirety. The sentences that follow the sentence identified above, however, do not disclose information obtained from the mediation. Therefore, the Court strikes only the first two sentences of that paragraph.
[11] Defendant also asks the Court to strike the phrase in paragraph 39 "Plaintiff has been rejected multiple times from June 2015" but that phrase does not disclose settlement negotiations.
[12] Defendant also asks the Court to strike the following allegations in paragraph 44: "Plaintiff felt she was discriminated against because David Senn, the lead scientist and Co-Director, stole Plaintiff's research ideas that Plaintiff emailed him in 2016 and hired a young Caucasian female to do the project that Plaintiff proposed to do voluntarily but was declined by David Senn that they didn't have the funds and lab resources."  As these allegations do not disclose settlement communications, the Court rejects Defendant's request.

1    Mediation Brief for sharing with Complainant').")); ¶ 52 p. 24 line 22 ("and June 8, 2023"); ¶ 53

2    (all); ¶ 54 p. 25 line 18 ("and June 8, 2023"); ¶ 55 (all).

3         Because Claims Five and Six are based entirely on Defendant's statements and/or conduct

4    at the mediation, those claims are dismissed with prejudice. Below, the Court addresses the

5    sufficiency of Plaintiff's remaining claims.

6    **IV.    MOTION TO DISMISS**

7         **A.    Legal Standards Under Rule 12(b)(6)**

8         A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

9    for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss

10   under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp.*

11   *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

12   is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

13   sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

14   that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

15        In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

16   takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

17   non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

18   Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

19   would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

20   1990).  A complaint must "contain either direct or inferential allegations respecting all the material

21   elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v.*

22   *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

23   1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

24   of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

25   (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion

26   couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

27   265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

28   'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

(alteration in original).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B.    Legal Standards Governing Timeliness of Title VII and ADEA Claims**

Pursuant to 42 U.S.C. § 2000e-5(e)(1), a Title VII plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred" if it occurred in a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice and the employee initially filed a grievance with that agency. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). The ADEA has the same requirement. *See* 29 U.S.C. § 626(d)(1); *Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007).  In the Ninth Circuit, a failure to hire claim accrues when the plaintiff knew or had reason to know of the actual injury, that is, when the plaintiff received notice they would not be hired or should have realized they had not been hired for the position. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).

**C.    Claim One**

**1.    Allegations in the FAC**

Claim One is based on SFEI's failure to hire Plaintiff for a position for which she applied in January 2021.  According to Plaintiff, this was her third application for a position with SFEI.  In particular, Plaintiff alleges that after she had contacted David Senn, the Co-Director of SFEI's Clean Water Program, in 2014, to discuss job opportunities and met with him in person in 2015, she submitted job applications in January 2015 and in June 2016 but was not given an interview or hired for either position.  FAC ¶¶ 15-19. Further, when she offered to work as a volunteer in March 2016, doing "in situ and lab incubation to study nitrogen and phosphorus cycling at water-sediment interface at North Bay delta and South Bay sloughs[,]" Senn declined her offer.  *Id.*  ¶ 17.

The FAC describes the circumstances surrounding Plaintiff's January 2021 application as follows:

United States District Court
Northern District of California

22. In early January 2021, Plaintiff saw abundant macro algae growing at Berkeley Marina which had been there since summer. She saw them in Emeryville and Albany too. Plaintiff learned that there was a San Francisco Bay Trail that run from Emeryville to Richmond. Plaintiff had never been to Richmond waterfront except Point Isabel. So Plaintiff zoomed in on google map to find the San Francisco Bay Trail from the intersection of Central Ave and Rydin Road to Marina Bay in Richmond. As San Francisco Estuary Institute was just beside the intersection, the word "employment" was shown on the site of the institute on google map. Plaintiff was curious so she went on sfei.org and saw the advertisement of the Program Manager/Senior Scientist position in the Nutrients Project on the right side of the institute's front page. Plaintiff didn't get notification from indeed.com for this position. Plaintiff knew David Senn was in charge of the Nutrients Project, so Plaintiff emailed him whether he was leaving for a new job on January 12, 2021: "Dear Dr. Senn, How are you? I saw a Program Manager/Senior Scientist position opening. I am wondering if you are leaving the institute for a new job? I have always been hoping to work with you. The water quality has gotten worse in the estuary as you know. Besides harmful algal blooms, macro algae have been growing along the shore line. I took some photos of them. The Great Lakes, the East Coast and Florida all have macro algae blooms, covering the surface waters, becoming a threat to fish anbenthic organisms. Our estuary has reached the critical point. Understanding nutrients cycling processes in the water column and across the benthic sediments is important. I wish our estuary would be able to avoid those events." Plaintiff attached two photos that she took in September 2020 at Berkeley Marina and Point Isabel, Richmond (just outside Defendant's institute) to show David Senn that a thick layer of green algae covered the rocks and floated on waters, and dense brown algae grew on rocks under the surface water along the shoreline, indicating severe eutrophication in our estuary. Plaintiff didn't get a response from David Senn, but she decided to apply for the Program Manager/Senior Scientist position.

23. While Plaintiff searched the institute's website for progress made in the Nutrients Project (Plaintiff hasn't done this since 2017 because Plaintiff was very depressed that she didn't get the opportunity to work for the Nutrients Project, and she didn't believe Defendant's mooring could generate quality data), she found a file by a young female Caucasian employee showing the preliminary data she got for denitrification. To Plaintiff's disbelieve, the young Caucasian employee was doing what Plaintiff proposed to do voluntarily but was declined by David Senn! This employee certainly got all the resources she needed, such as sediment core sampling, lab facilities as well as several people helping her. Plaintiff was extremely hurt reading her document. Plaintiff trusted David Senn, the lead scientist and Co-Director, that he didn't have resources for Plaintiff to volunteer. But he stole Plaintiff's idea and got funds to hire this young female Caucasian employee to do the work that Plaintiff proposed to do voluntarily; therefore, to raise his own research profile. So, Plaintiff submitted her application and emailed David Senn on January 19, 2021: "I would like to let you know that I have applied for the scientist position. I have contacted you for several years to express my interest in studying nutrient biogeochemistry in the estuary. My knowledge, experience as well as expertise in voltammetry technology will be

helpful in understanding the nutrient biogeochemistry. Not only harmful algal blooms occur but macro algal blooms have been present from summer to fall along the shore line. I wish that I could contribute to decipher nutrient transportation and cycling pathways. Please support my application." David Senn replied that he saw Plaintiff's application but Plaintiff didn't get an interview.

FAC ¶ 23.

In Claim One, Plaintiff's allegations are as follows:

44. Title VII of the Civil Rights Act of 1964 and the ADEA prohibit employment discrimination based on age, race, color, religion, sex, and national origin. In January 2021, Plaintiff applied for the Project Manager/Senior Scientist position for the Nutrients Project. Plaintiff felt she was discriminated because David Senn, the lead scientist and Co-Director, stole Plaintiff's research ideas that Plaintiff emailed him in 2016 and hired a young Caucasian female to do the project that Plaintiff proposed to do voluntarily but was declined by David Senn that they didn't have funds and lab resources. So Plaintiff emailed David Senn after submitting her application to remind him that Plaintiff's expertise was useful for the Nutrients Project and asked him to support her application. David Senn replied that he saw Plaintiff's application but Plaintiff didn't get an interview. Plaintiff thinks that this position was an irregular hiring because the advertisement was on the frontpage of Defendant institute's website, other than public job board. [Plaintiff learned on June 8, 2023 in the CRD mediation meeting from the document "Shufen v. SF Estuary-Mediation Brief for sharing with Complainant" that Defendant hired Lisa Hunt, a mixed-race female as the Program Manager/Senior Scientist.] Lisa Hunt's LinkedIn profile shows that she worked from Mar 2021 - Mar 2022 at Defendant's institute. A search of Lisa Hunt on Defendant institute's website shows a webpage about a pesticides project with Lisa Hunt as one of the contributors, but her name was inactive. Lisa Hunt may have management skills, but her work was focused on pesticides. Pesticides and nutrients biogeochemistry are two very different research fields. How could Lisa Hunt manage the Nutrients Project without nutrients biogeochemistry and harmful algal bloom experience? Plaintiff believes that she herself was well qualified for the position because Plaintiff have much more knowledge in nutrients biogeochemistry, harmful algal blooms, fish kills, benthic organisms' ecology, plant biogeochemistry, as well as cutting-edge technology. Plaintiff had experience working with government officials, local environmental organizations, and the public. Plaintiff has taken lead in several projects bringing about many peer-reviewed publications. Defendant discriminated against Plaintiff's age, race, and national origin. Plaintiff was harmed professionally, financially, and physically. [Plaintiff learned that she was harmed on June, 8, 2023 so her CRD claim was filed timely. Plaintiff reported this case to CRD; therefore, Plaintiff has exhausted administrative remedies.]

FAC ¶ 44 (material stricken under Rule 12(f) in square brackets).

### 2.   Contentions of the Parties

#### a.   Motion

Defendant asserts in the Motion that this claim is untimely because Plaintiff failed to file her administrative complaint with the CRD within 300 days of the date when the Title VII and the ADEA claims accrued.  Motion at 13-14. In particular, Defendant contends, because Plaintiff's administrative complaint was filed with the CRD on September 2, 2022, "her claims for failure to hire are timely only if she did not know or have reason to know that she had not been hired for the positions on which her claims are based until on or after November 6, 2021." *Id.* at 14. Defendant argues further that Plaintiff's allegations establish that she knew or should have known she had not been hired for this position by March 2021, pointing to Plaintiff's allegation that "Defendant hired an applicant for the position in March 2021, which Plaintiff discovered through this employee's publicly available LinkedIn profile." *Id.* at 14 (citing FAC ¶ 44).

As discussed above, Defendant also asks the Court to strike Plaintiff's allegation that she did not become aware the position had been filled until June 8, 2023, when she participated in a mediation with Defendant, on the basis that this allegation violates the confidentiality agreement signed by the parties and the Court's express order prohibiting Plaintiff from relying on information obtained at the mediation in her FAC. *Id.* at 20.  The Court has granted that request.

Finally, Defendant argues that Plaintiff fails to state a claim under Rule 12(b)(6) as to all of her claims, including Claim One, because she does not allege facts sufficient to make a prima facie case of discrimination. *Id.* at 16-18.  According to Defendant, to meet this requirement, Plaintiff must allege "that (1) she is a member of a protected class; (2) she applied for and was individually qualified for a job for which the employer was seeking applicants; (3) she was rejected despite her individual qualifications; and (4) the position remained open and the employer continued to seek applicants from persons of comparable qualifications." *Id.* (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985)). According to Defendant, the third and fourth elements "are satisfied by a showing Defendant selected, instead of Plaintiff, a substantially younger employee with equal or inferior qualifications or a person of another race or national origin." *Id.* (citing *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122-23 (9th Cir. 2004)).

As to all of her claims, including Claim One, Defendant contends Plaintiff fails to allege specific facts showing she was "individually qualified" for the job for which she applied or that the employer continued to seek applicants with "comparable qualifications" because she did not allege the "requisite qualifications for each position[,]" that "Defendant specifically sought applicants with that specific experience[,] or how her experience would make her qualified for the posted positions." *Id.* at 17-18.  It argues further that as to Claim One, Plaintiff does not allege facts establishing that she was not hired *because* or her race, national origin or age, citing Plaintiff's allegation that it "hired a 'mixed-race female,' for the Project Manager/Senior Scientist position she applied for in January 2021[,]" and asserting that this failure "to allege specifics regarding this applicant's race [ ] . . . is highly relevant to Plaintiff's claim that Defendant failed to hire her *because* of her race." *Id.* at 18 (citing FAC ¶ 44). Defendant also argues that Plaintiff fails to state a claim as to any of the positions upon which her claims are based because "Plaintiff has not alleged any facts establishing that David Senn knew Plaintiff's age, race, or national origin when Plaintiff applied but was not selected for the positions." *Id.*  at 18-19.

> b.  Opposition

Plaintiff rejects Defendant's argument that Claim One is untimely because she knew she had not been hired for the position before November 6, 2021.  Opposition at 10-11.  In particular, she states that she did not search for Lisa Hunt's LinkedIn profile until September 2023, after she learned at the mediation on June 8, 2023 that Hunt had been given the position.  *Id.*  She further states that she "had not logged on to Defendant's website from February 2021 to August 2023, so Plaintiff has no way to know when Lisa Hunt was hired."  *Id.*  Plaintiff continues, "[i]f Lisa Hunt updated her LinkedIn profile in March 2021 or later, does LinkedIn have the obligation to notify Plaintiff whenever their tens of millions of members update their profiles even though Plaintiff has never had a LinkedIn account?"  *Id.* at 11.

As to Defendant's argument that Plaintiff violated the Court's order in alleging that she learned that the position had been filled at the mediation, Plaintiff explains that she believed that Defendant authorized her to disclose information in the mediation brief it gave to her, citing

paragraph 32 of the FAC.[13]  *Id.*  at 12.  Plaintiff also cites California Senate Bill 331, "known as the 'Silenced No More Act', [which] went into effect on January 1, 2022."  *Id.* at 12-13. According to Plaintiff, this bill "broadened the Fair Employment and Housing Act's existing protections against overbroad and unnecessarily restrictive employment agreements" and "expanded protections in the Civil Code related to settlement agreements."  *Id.*  She contends that under this law, "Defendant cannot restrict or prevent Plaintiff from disclosing factual information related to Defendant's act of discrimination[.]"  *Id.* at 13.

Plaintiff also rejects Defendant's argument that she has failed to plausibly allege discrimination in Claim One.  *Id.* at 15-18.  She argues that she adequately alleged Senn was aware of her age, race and national origin because she provided him with her curriculum vitae in 2014 and alleges that she met with him for over an hour in 2015 to discuss job opportunities.  *Id.* at 15 (citing FAC ¶¶ 15-16). Plaintiff asks, "How could David Senn not know that Plaintiff belonged to protected classes based on her age, race, and national origin?"  *Id.*  As to her qualifications, Plaintiff recites at length her professional background to show that she has adequately alleged that she was the most qualified applicant for all the jobs for which she applied. *Id.* at ¶¶ 15-17. She also points to allegations about Lisa Hunt specifically that she contends

_____

[13] In paragraph 32, Plaintiff alleges as follows:

On June 8, 2023, CRD's Mr. Thomas Bennett held a mediation meeting between Plaintiff and Defendant at 10 am. Mr. Bennett emailed Plaintiff a copy of the document "Shufen v. SF Estuary- Mediation Brief for sharing with Complainant" from Defendant at 10.04 am, at the start of the meeting, and indicated that Defendant wanted to share this document with plaintiff. This document doesn't include anything from the mediation meeting. In this document, a sentence is indicated to Mr. Bennett: "This redacted version may be shared with Claimant Shufen Ma ("Dr. Ma")". After the mediation failed, Mr. Bennett told Plaintiff that Plaintiff can keep this document and show it to her lawyer. Ms. Blackwell at CRD has this document too, possibly because this is Defendant's response to CRD about Plaintiff's claim. Therefore, Plaintiff believes that if she should show this document to her lawyer then she should show it to The Honorable Judge. [The main point of the document "Shufen v. SF Estuary- Mediation Brief for sharing with Complainant" is that Plaintiff didn't get an interview opportunity because Plaintiff has never been qualified for any of the positions that she applied for. Plaintiff completely disagree that she has never been qualified. Plaintiff believes that she has been the most qualified applicant for the Nutrients Project based on her qualification. David Senn even stole Plaintiff's scientific ideas to raise his own research profile but Defendant shamelessly claimed that Plaintiff was not qualified.]

FAC ¶ 32 (material stricken under Rule 12(f) in square brackets).

establish that Ms. Hunt was less qualified than Plaintiff. *Id.* at 18 (citing FAC ¶¶ 34, 41, 44).

Plaintiff further asserts, "Defendant indicated that Lisa Hunt was mixed race and 49 years old, but

Lisa Hunt is still a decade younger than Plaintiff." *Id.*

              c.   Reply

In its Reply, Defendant rejects Plaintiff's argument that the claim is timely because she did

not visit Defendant's website from February 2021 to August 2023 and did not learn that Lisa Hunt

had been hired until the mediation in 2023, searching LinkedIn only after the mediation. Reply at

2-3. The test, Defendant asserts, is when Plaintiff *should* have known she had not been hired. *Id.*

at 3. According to Defendant, Plaintiff should have known this before November 6, 2021 because

"Defendant lists its staff members on its website" and "Linkedin allows the public to search by

current employer, which would have shown that the hired employee was hired into the position

well before June 2023." *Id.* (citing Request for Judicial Notice in Support of Reply to Opposition

("Reply RJN") ¶¶ 1-2 & Exs. A (Defendant's "Our Staff" page of its website

(https://www.sfei.org/staff), captured on March 13, 2024), B (Alfie Lambert's October 14, 2022

blog posting on Lix Blog entitled, "How to find the current or former employees of a company on

LinkedIn (and export them!)" (https://lix-it.com/blog/find-employees-of-any-company-on-

linkedin/), captured on March 13, 2024)). Defendant contends that "had Plaintiff engaged in

reasonable diligence instead of allegedly burying her head in the sand then she would have

realized she was not hired for the position as early as March 2021." *Id.*

As to whether Plaintiff sufficiently alleges that she was not hired for this position based on

her age, race, or national origin, Defendant rejects Plaintiff's assertion that David Senn was aware

of her age, race and national origin because she had sent him her CV and met with him to discuss

job opportunities, asserting that the paragraphs in the FAC cited by Plaintiff do not actually allege

such facts and moreover, to the extent Senn met with Plaintiff face-to-face, "it is presumptuous for

Plaintiff to assume that [Senn] knew Plaintiff age, race and national origin based on her

appearance alone." *Id.* (citing FAC ¶¶ 15, 16).[14] Similarly, Defendant rejects Plaintiff's argument

---

[14] Paragraphs 15 and 16 allege as follows:

that she has alleged facts establishing discrimination based on age, race or national origin, arguing that the facts cited in Plaintiff's Opposition brief are not alleged in the FAC.  *Id.*  In particular, Defendant argues that "nowhere in Plaintiff's FAC does she allege that Lisa Hunt was 49 years old."  *Id.*

### 3.  Discussion

#### a.   Whether Claim One is timely

Defendant contends Claim One is untimely based on two theories.  First, in the Motion Defendant contends the allegations in the FAC establish that Plaintiff knew she had not been hired by March 2021, more than 300 days before she filed her DFEH complaint.  Second, Defendant argues in the Reply that Plaintiff *should* have known before November 6, 2021 (300 days before she filed her administrative complaint) that she had not been hired for the position because she

---

15.  In August 2014, when Plaintiff learned that Defendant started the Nutrients Project, she emailed David Senn for job opportunity. He replied shortly "You've done some really interesting work! I've personally (and professionally) always been interest in voltametric analysis and electrodes but never had the chance to work at the cutting edge. Some time in the next couple weeks we will be posting an advertisement for a position working on coordinating moored sensor-related projects in the Bay. While your experience would certainly allow you to make substantial contributions, the bulk of our monitoring work would be using fairly basic/commercially-available sensor packages". "I'd be happy to talk some time to discuss potential opportunities and will also send you the advertisement when it's posted."

16. In early January 2015, Plaintiff saw the environmental scientist position advertisement on indeed.com so Plaintiff went to talk to David Senn about the job opening because he emailed Plaintiff that he'd be happy to talk to her about potential opportunities. Plaintiff and David Senn had a conversation for more than an hour in his office. He talked about the Nutrients Project and said that nitrate present in the estuary was due to the lack of organic carbon source for denitrification. Plaintiff instantly replied that she didn't think so. Plaintiff's research experiences in nutrient biogeochemistry told her that eutrophication has been s a very common problem in coastal waters of the United States. Plaintiff explained why she should be the best candidate based on her research experience, but David Senn indicated that he wanted a person to drive a boat to do field work. Plaintiff told him that she still had a boat driving license. Eventually, David Senn said Plaintiff should apply and asked her to copy her application to him. Plaintiff applied but didn't get an interview opportunity. When Plaintiff went to David Senn's office in early April 2015, he told Plaintiff that he had offered the position to someone, a young male Caucasian with a master's degree. Plaintiff has multiple peer-reviewed publications and newspaper reports to demonstrate that Plaintiff has used cutting-edge technology to investigate water quality, nitrogen and phosphorus redox cycling in water column and sediments, harmful algal bloom and fish kill in lake and estuaries. Plaintiff was more qualified for the position.

FAC ¶¶ 15-16.

was required to use reasonable diligence to discover the injury upon which she bases this claim and that injury occurred no later than March 2021, when Lisa Hunt was hired to fill the position. The first theory is based on a mischaracterization of the allegations in the FAC, which does not allege that Plaintiff *contemporaneously* discovered on LinkedIn (or anywhere else) that the position had been filled in March 2021.  Therefore, Defendant's first argument fails.  The Court concludes that Defendant's second argument has merit, however, as discussed below.

As discussed in the Court's December 22, 2023 Order, in the Ninth Circuit, a failure to hire claim accrues when the plaintiff knew or had reason to know of the actual injury, that is, when the plaintiff received notice they would not be hired *or should have realized* they had not been hired for the position. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (emphasis added).  The "should have realized" requirement is met where a plaintiff should have discovered the "critical fact" of their injury, namely, "that [they have] been hurt and who has inflicted the injury;" the plaintiff need not be aware that the actor who caused the injury was legally blameworthy.  *See United States v. Kubrick*, 444 U.S. 111, 122 (1979).   The Ninth Circuit has explained that "[t]he plaintiff must be diligent in discovering the critical facts." *Bibeau v. Pac. Nw. Rsch. Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999), opinion amended on denial of reh'g, 208 F.3d 831 (9th Cir. 2000).

Generally, whether a plaintiff was reasonably diligent in discovering the injury is a fact intensive inquiry that requires consideration of:  1) whether the plaintiff was under a duty to inquire based on the specific circumstances; and 2)  whether it is likely that the plaintiff would have learned of their injury had the plaintiff attempted to discover it.  *Id.*; *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir.1993) (observing that whether a claim is time-barred is "not generally amenable to resolution on a Rule 12(b)(6) motion" because the court cannot consider materials outside the pleadings and the applicability of the equitable tolling doctrine often depends on matters outside the pleadings).  That said, even under the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must allege facts sufficient to give rise to a plausible inference that the claim was timely under the discovery rule. *Adler v. Taylor*, No. CV 04-8472-RGK(FMOX), 2005 WL 4658511, at *5 (C.D. Cal. Feb. 2,

2005), aff'd sub nom. *Orkin v. Taylor*, 487 F.3d 734 (9th Cir. 2007) ("The Complaint fails to allege any diligence on Plaintiffs part, much less any reasonable diligence. Thus, even if the discovery rule applied to this case, Plaintiffs have still failed to state a claim.").

Here, the parties are in agreement that in order to be timely, Plaintiff's claim must have accrued no earlier than November 6, 2021.   Thus, Plaintiff must allege facts raising a plausible inference that despite using reasonable diligence, Plaintiff did not understand that she had not been hired for this position until November 6, 2021 or after that date.   Plaintiff has not alleged any facts, however, that support a plausible inference that she was reasonably diligent with respect to the discovery of her injury.   There is no allegation that Plaintiff inquired of anyone at SFEI, at any point, as to whether the position had been filled, even though Plaintiff alleges elsewhere in the FAC that as to a past job application she had emailed David Senn to inquire about whether a position had been filled.   FAC ¶ 19.   Nor is there any allegation that Plaintiff followed up by checking the SFEI website, even though she alleges that she had previously searched that website for job opportunities and had learned about other new hires on the website.   *See, e.g.,* FAC ¶ 23 (alleging that she learned from the SFEI website that a "young female Caucasian" had been hired to performed the work she had volunteered to do for free).   To the contrary, Plaintiff represents in her Opposition brief that she "had not logged on to Defendant's website from February 2021 to August 2023."   Opposition at 10-11.

Finally, Plaintiff has alleged facts in the FAC showing that she had reason to suspect, even at the time she applied for the position in January 2021, that she would not be hired.   These include her allegations as to her past unsuccessful job applications, the rejection of her offer to volunteer, and her belief that Senn had previously stolen her idea and hired someone else to perform the same work, discussed above.   In other words, based on Plaintiff's allegations in the FAC, she had reason to suspect her injury soon after she submitted her application and yet failed to make any inquiry about the position for more than eight months. [15]

---

[15] The Court does not consider the evidence attached to Defendant's Reply RJN offered to show, as a factual matter, that Plaintiff could have discovered before November 6, 2021 that Lisa Hunt had been hired to fill the position by searching SFEI's staff listings on its website or LinkedIn. *See* Reply RJN, Exs. A & B.   Defendant has cited no authority suggesting that consideration of

United States District Court
Northern District of California

1    In short, Plaintiff failed to include in the FAC any allegations showing that she acted

2    diligently despite the Court's previous order setting forth the requirements for establishing her

3    claim was timely.  The Court therefor concludes that Claim One fails on the pleadings because it

4    is untimely.

5        b.  Whether Plaintiff has Plausibly Alleged Discriminatory Intent

6    To make a prima facie case of employment discrimination based on failure to hire, Plaintiff

7    must establish that (1) she is a member of a protected class; (2) she applied for and was qualified

8    for a job for which the employer was seeking applicants; (3) she was rejected despite being

9    qualified for the job; and (4) that after the plaintiff's rejection, the position remained open and the

10   employer continued to seek applicants from persons of comparable qualifications.  *Lowe v. City of*

11   *Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985)).  Alternatively, a prima facie case of

12   discrimination can be made plaintiff if a plaintiff demonstrates that (1) she is a member of a

13   protected class; (2) she applied for a position for which she was qualified; and 3) that a person

14   who was not within a protected class with similar qualifications received the position.  *Cotton v.*

15   *City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987).

16   "The Supreme Court has explicitly held that the prima facie case in the discrimination

17   context 'is an evidentiary standard, not a pleading requirement.'"  *O'Donnell v. U.S. Bancorp*

18   *Equip. Fin., Inc.*, No. C10-0941 TEH, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010)

19   (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).  Thus, "an employment

20   discrimination plaintiff need not plead a prima facie case of discrimination," *id.* at 515; instead,

21   "the ordinary rules for assessing the sufficiency of a complaint apply," *id.* at 511.   Nonetheless, it

22   has been recognized that the elements of a prima facie case "are . . . relevant to the court's analysis

23   of the sufficiency of the complaint." *O'Donnell*, 2010 WL 2198203, at *3 (N.D. Cal. May 28,

24   2010).

---

evidence related to reasonable diligence is proper on a Rule 12(b)(6) motion and the Court finds
that it is not.   Therefore, the Reply RJN is DENIED as to those exhibits. The Court also notes that
it has (at Defendant's request) stricken the allegation that in March 2021 Lisa Hunt was hired for
the position Plaintiff had applied for in January because this information was disclosed to Plaintiff
in Defendant's mediation brief.  Therefore, Defendant's reliance on the fact that Hunt was,
apparently, hired in March 2021, to support its challenge based on timeliness is misplaced.

United States District Court
Northern District of California

1    Here, Plaintiff included allegations in her FAC that she exchanged emails with David Senn

2    about the possibility of working for SFEI and that Senn described Plaintiff's background and

3    research as "really interesting" and "cutting edge." FAC ¶¶ 14-15.  She further alleges that in

4    2015, when she saw a job opening at SFEI for an environmental scientist, Senn met with Plaintiff

5    in person to talk about "potential opportunities" at SFEI and that after "more than an hour" Senn

6    "said Plaintiff should apply and asked her to copy her application to him."  FAC ¶ 16. Finally, she

7    includes detailed allegations about her scientific background and qualifications to serve in the

8    senior scientist position.  FAC ¶ 44.  From these allegations, one can draw a plausible inference

9    that Senn was generally aware of Plaintiff's age, race and ethnicity and that Plaintiff was qualified

10   for the position.

11   On the other hand, Plaintiff has not alleged specific facts raising a plausible inference that

12   she was not hired for the position for which she applied *because* of her age, race or national origin.

13   First, Plaintiff has not alleged specific facts about the age, race or national origin of the individual

14   who was hired for the job for which she applied and was not hired.  Furthermore, because the fact

15   that Lisa Hunt was hired for this position was disclosed in mediation, Plaintiff cannot allege this

16   specific fact in her second amended complaint.[16]  Another avenue to pleading discriminatory

17   intent would be to allege that Defendant rejected her application while continuing to consider

18   applications from individuals with comparable qualifications who were younger and/or were not

19   in a protected group with respect to race or national origin.  However, the FAC contains no such

20   allegations.  The FAC also does not allege Defendant engaged in any conduct that directly

21   reflected discriminatory intent, such as statements showing animus towards any of the relevant

22   protected groups.

23   In Claim One, Plaintiff does allege that Senn "stole Plaintiff's research ideas that Plaintiff

24   emailed him in 2016 and hired a young Caucasian female to do the project that Plaintiff proposed

25

26   ───────────────

27   [16] Of course, if Defendant were to concede, as a factual matter, that Hunt was hired for the
     position Plaintiff applied for, Plaintiff could rely on that information in her complaint, as well as
     any additional information she has obtained about Hunt outside of the mediation, because Rule
28   408 does not protect pre-existing information simply because it was presented to the adversary in
     compromise negotiations, as discussed above.

to do voluntarily but was declined by David Senn that they didn't have funds and lab resources." FAC ¶ 44; *see also* FAC ¶ 23. This allegation is not sufficient to raise a plausible inference of discriminatory intent as to the position Plaintiff applied for in January 2021, however. According to Plaintiff's own allegations, her offer to conduct volunteer work was made approximately five years before she discovered Defendant had hired someone else to conduct similar work and it is not clear when that person was hired, what qualifications were required for that position or whether the position the "young Caucasian female" was hired for was similar to the senior scientist position for which Plaintiff applied in January 2021. In sum, Plaintiff's allegation that Defendant's hiring of a young Caucasian female for a different job shows discriminatory intent as to the position for which she applied in January 2021 is entirely speculative.

Therefore, the Court finds that Plaintiff fails to state a viable claim of discrimination based on age, race or national origin under Title VII and the ADEA as to Claim One.

### 4. Conclusion

The Court dismisses Claim One on the basis that Plaintiff has failed to allege sufficient facts to show that it is timely or to state a claim under Rule 12(b)(6). In light of Plaintiff's pro se status, she will be given leave to amend to attempt to cure these shortcomings if she can.

### D. Claim Two

#### 1. Allegations in the FAC

Claim Two is based on Defendant's failure to hire Plaintiff for a position for which she applied in October 2021. She alleges in the FAC that "Plaintiff applied the fourth time for an environmental scientist position for sensor technology on October 13, 2021. Plaintiff's voltammetric microelectrodes are the most important sensors for the Nutrients Project but she didn't hear from Defendant." FAC ¶ 24. She further alleges that when she submitted her administrative complaint to the CRD, in June 2022, she listed the date of injury as to this application as October 16, 2021 for the following reasons:

> Plaintiff thought the timeline she was harmed by Defendant's discrimination was from the first time to the last time Plaintiff submitted her application; therefore, Plaintiff put down October 16, 2021, the date that Plaintiff submitted her fourth application online, as the last day of harm (When Plaintiff filed her claim with CRD, she

thought she submitted her fourth application on October 16, 2021.
Later, Plaintiff found her record that she submitted the fourth
application on October 13, 2021). So October 16, 2021 was not the
date that Plaintiff learned she was harmed for her fourth application.
She found it out on a much later date ([June 8, 2023, see later
paragraphs]).

FAC ¶ 25 (material stricken under Rule 12(f) in square brackets).

In Claim Two, Plaintiff alleges as follows:

45. On October 13, 2021, Plaintiff applied for an environmental
scientist position for sensor technology but didn't get an interview.
October 13, 2021 was the last date that Plaintiff contacted Defendant
through online application submission, not the date that Plaintiff
learned that she was harmed. It was impossible for Plaintiff to know
that she was harmed before November 6, 2021(the 300-day limit), less
than a month after her application submission given that Defendant
should have taken time to interview applicants of their choice.
[Plaintiff learned from the document "Shufen v. SF Estuary-
Mediation Brief for sharing with Complainant" on June 8, 2023 that
a young male Caucasian was hired who studied bivalves.] Plaintiff's
voltammetric microelectrodes are the most important sensors for the
Nutrients Project. Plaintiff has multiple peer-reviewed publications
for bivalves' ecology and biogeochemistry in extreme environments
with large data set. Plaintiff also modeled chemical speciation
consumption in acid mine drainage biofilms. Plaintiff has extensive
experience in water quality, harmful algal blooms, fish kills as well
as cutting-edge technology and modeling. Therefore, Plaintiff was
more qualified for this position. Defendant discriminated against
Plaintiff's age, race, and national origin. [Plaintiff was harmed
professionally, financially, and physically. Plaintiff learned that she
was harmed on June 8, 2023] so her CRD claim was filed timely.
Plaintiff reported this case to CRD; therefore, Plaintiff has exhausted
administrative remedies.

FAC ¶ 45 (material stricken under Rule 12(f) in square brackets).

### 2. Contentions of the Parties

#### a. Motion

In the Motion, Defendant contends this claim, like Claim One, is untimely, because

Plaintiff's administrative complaint indicates that the injury occurred on October 16, 2023, which

is more than 300 days before she filed the administrative complaint.  Motion at 14.  Defendant

rejects Plaintiff's explanation of why she listed October 16, 2021 as the date of injury, asserting

that Plaintiff is simply trying to circumvent the Court's prior ruling that this claim is untimely.  *Id.*

According to Defendant, the Court relied on the date stated in the administrative complaint alone.

*Id.*

Defendant also argues that the Court should disregard Plaintiff's allegation that she did not learn that she was harmed until June 8, 2023 for several reasons. *Id.* at 15.  First, as discussed above, Defendant contends this allegation violates the Court's December 22, 2023 Order prohibiting Plaintiff from asserting claims based on conduct that occurred during the parties' settlement negotiations. *Id.*   Second, Defendant argues that pursuant to Federal Rule of Evidence 408, Plaintiff may not rely on conduct or a statement made during compromise negotiations to prove or disprove the validity of a disputed claim. *Id.*

Third, Defendant argues that "Plaintiff's new allegation about the date of discovery that she was not hired is a sham as it contradicts what Plaintiff wrote in her DFEH/EEOC charge and signed under penalty of perjury (of which the Court previously took judicial notice), namely, 'I allege that I experienced discrimination on or before October 16, 2021.'" *Id.*   Defendant further asserts that this attempt to "conform the facts to prevent the court from ruling again that her Second Claim is untimely by contradicting what she wrote in her DFEH/EEOC charge should be stricken or dismissed as a sham." *Id.* (citation omitted).

Fourth, Defendant argues that while Plaintiff relies on her discovery in June 2023 that the person hired for this position was a "young, male, Caucasian", FAC ¶ 45, what matters is when Plaintiff knew or should have known that she had not been hired for the position. *Id.*   According to Defendant, Plaintiff has not alleged facts relating to when she knew or should have known of her injury so this claim must be dismissed as untimely. *Id.* As discussed above, the Court has stricken this portion of Claim Two.

Defendant also argues that Plaintiff fails to state a claim under Rule 12(b)(6) because she does not allege sufficient facts to show discriminatory intent as to Claim Two. *Id.* at 17-18.  Like Claim One, Defendant asserts that Claim Two fails because Plaintiff does not allege specific facts about the qualifications required for the position or how her own qualifications make her more qualified for the position than the "young male Caucasian" she alleges was hired to fill it. *Id.* at 18.  Defendant further asserts that "Plaintiff fails to allege the applicant's age or his qualifications in contrast to the position's requirements so she has not alleged facts suggesting that a "substantially younger person with similar (or lesser) qualifications" was hired over her. *Id.*

31

1    (citing *Manzoor v. Travis Credit Union*, No. 12-CV-1183 GEB GGH, 2012 WL 2160966, at *3

2    (E.D. Cal. June 13, 2012)).

3                    b.   Opposition

4            In her Opposition, Plaintiff rejects Defendant's assertion that she knew or should have

5    known by November 6, 2021 that she had not been hired for the position she applied for in

6    October 2021, asserting that it "was impossible for Plaintiff to know that she was harmed before

7    November 6, 2021(the 300-day limit), less than a month after her application submission [ ] [as]

8    Defendant might still be in the application collection process, have not started applicants screening

9    yet."  Opposition at 5; *see also id.*, at 11-12.  She further asserts that she could not have known

10   that she had not been hired for the position by November 6, 2021 because Defendant never

11   contacted Plaintiff about her application and she didn't visit Defendant's website between

12   February 2021 to August 2023.  *Id.*  at 12.

13           As to the date of injury listed in her administrative complaint, Plaintiff asserts that her

14   understanding of when her injury occurred was based on advice of an attorney at Legal Aid at

15   Work, who told her that her injury occurred on the last date she had contact with SFEI, and she

16   has provided a declaration to that effect.  *Id.* at 11 (citing Declaration of Shufen Ma in Support of

17   Opposition to Motion to Dismiss and Motion to Strike ("Ma Decl.")).  She also explains that when

18   she completed the administrative complaint, she erroneously believed that she filed the online

19   application for this position on October 16, 2021 but she later discovered she had filed the

20   application on October 13, 2021.  *Id.*   Plaintiff requests judicial notice of "[t]he record that

21   Plaintiff submitted her fourth application online on October 13, 2021[,]" which appears to be a

22   screenshot of a Google document, carrying no date or details, showing that an application with

23   SFEI had been submitted.  Plaintiff's Request for Judicial Notice in Support of Plaintiff's

24   Opposition to Motion to Dismiss and Motion to Strike ("Opposition RJN") ¶ 1 & Ex. A.

25                   c.   Reply

26           In response to Plaintiff's Opposition, Defendant objects to the Ma Declaration, arguing

27   that declarations are not properly considered on a motion to dismiss under Rule 12(b)(6) and

28   furthermore, that Plaintiff's account of what she was told by the Legal Aid at Work attorney is

United States District Court
Northern District of California

inadmissible hearsay under Rule 801(c) of the Federal Rules of Evidence.  Defendant's Objection to Plaintiff's Declaration in Support of Opposition to Motion to Dismiss and Motion to Strike First Amended Complaint ("Objection to Ma Declaration").   Defendant also objects to Plaintiff's request for judicial notice of the screenshot attached as Exhibit A, asserting that this document does not comport with Rule 201 of the Federal Rules of Evidence because it "cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned nor is it generally known within the trial court's territorial jurisdiction."  Defendant's Objection to Plaintiff's Request for Judicial Notice in Support of Opposition to Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint ("Objection to Ma RJN").  Defendant also points out that the screenshot does not contain a date and does not establish that Plaintiff's application was filed on October 13, 2021, contrary to Plaintiff's representation in the request for judicial notice.

In its Reply brief, Defendant reiterates its argument that Plaintiff may not contradict the facts stated in her administrative complaint as to the date of injury and that she has failed to sufficiently allege discriminatory intent as to this claim.

### 3.  Discussion

As a preliminary matter, the Court declines to rule on Defendant's objections to the Ma Declaration or Exhibit A to her request for judicial notice in addressing Defendant's challenges. As to the former, the information supplied in the declaration is materially the same as the allegations in the FAC regarding the date listed in the Plaintiff's administrative complaint, which the Court assumes to be true in ruling on a Rule 12(b)(6) motion. Therefore, the declaration would not change the Court's conclusion even if the Court were to consider it.  Likewise, as to Plaintiff's request for judicial notice of Exhibit A, the Court's conclusion would be the same regardless of whether Plaintiff applied for the position that is the subject of Claim Two on October 13, 2021 or October 16, 2021. [17]

---

[17] The Court rejects Defendant's assertion that Plaintiff's allegations as to the accrual date of this claim are "sham" in light of statements in Plaintiff's administrative complaint that she "experienced discrimination on or before October 16, 2021." *See* dkt. no. 9-1 at ECF p. 9. The

United States District Court
Northern District of California

The question of whether Plaintiff has alleged sufficient facts to show that Claim Two is timely raises many of the same issues discussed above, in connection with the timeliness of Claim One. There are differences between the two claims, however, that make this issue somewhat more difficult to resolve as to Claim Two.  In particular, whereas the allegations in support of Claim One establish that Plaintiff applied for the position almost ten months before the November 6, 2021 earliest accrual date, the FAC alleges as to Claim Two that the application was submitted just a few weeks before November 6, 2021 and there is no allegation as to when Plaintiff was rejected or when the position was filled. And even the allegation that the position was, in fact, filled has been stricken as that information was provided to Plaintiff in a settlement communication.

While the Court has no difficulty concluding, as a matter of law, that a failure to make any attempts to learn if a job has been filled over a period of almost ten months is not reasonably diligent for the purpose of determining when a claim accrued, the allegations as to Claim Two present a closer call. Typically, in an employment discrimination case involving a failure to hire, the date of injury is the date when the plaintiff was notified that they were rejected for the position. *See Lukovsky*, 535 F.3d at 1051. Where there is no notice, however, it is less clear when the injury occurred or when, through the exercise of reasonable diligence, a plaintiff should have known about the injury.

The Court concludes that even where Plaintiff alleges that she was never formally rejected for the position, she must allege facts showing that she would not, with reasonable diligence, have learned that Defendant had decided not to hire her by the earliest accrual date.  Construing the allegations in the FAC liberally in light of Plaintiff's pro se status, the Court further concludes that

---

administrative complaint does not explicitly state that October 16, 2021 was the date Plaintiff learned she had not been hired and Plaintiff, who is not an attorney, should not be charged with knowledge of the legal nuances of when an injury occurs in a failure to hire case in which the plaintiff received no notice that they were rejected for the position.  Nor did the Court's December 22, 2023 Order rule out the possibility that Plaintiff might establish that the claim accrued at a later date.  Indeed, it expressly permitted Plaintiff to amend her complaint to allege additional facts in that respect.

Plaintiff's allegations are sufficient, as a matter of pleading, to raise an inference that Plaintiff did not know –and should not reasonably have known – as of November 6, 2021, that she had not been not hired for this position.  In particular, Plaintiff alleges that "[i]t was impossible for Plaintiff to know that she was harmed before November 6, 2021(the 300-day limit), less than a month after her application submission given that Defendant should have taken time to interview applicants of their choice." FAC ¶ 45. This allegation supports a plausible inference that as of November 6, 2021, Plaintiff did not yet have a duty to inquire as to the status of her job application and therefore, that she was unaware of her injury as of November 6, 2021 through no lack of diligence.  While Defendant may challenge this allegation on summary judgment or at trial, where Plaintiff will continue to bear the burden of proving her claim is timely, the Court finds that Claim Two is timely as a matter of pleading.

However, the Court finds that Plaintiff has not adequately alleged discriminatory intent as to Claim Two.  Plaintiff has included no allegations – except for the allegations the Court has stricken – that Defendant hired for the position someone with similar qualifications who was not in the protected group.  Nor does she allege that Defendant continued considering the applications of such individuals after rejecting Plaintiff's application.  Finally, there are no other allegations that give rise to a plausible inference – as opposed to mere speculation – that Defendant's failure to hire Plaintiff for this position was because of her age, race or ethnicity.

### 4.  Conclusion

The Court concludes that while Plaintiff adequately alleges that Claim Two is timely, she has failed to allege sufficient facts to state a claim under Rule 12(b)(6).  Plaintiff will be permitted to amend her complaint to try to cure this defect.

### E.   Claim Three

#### 1.  Allegations in the FAC

Claim Three is based on Defendant's alleged failure to respond to a September 5, 2022 email to Ms. Eileen White, a board member of SFEI, which White forwarded to David Senn, in which Plaintiff offered to "do anything to help."  FAC ¶¶ 46-50.  According to Plaintiff, "Defendant's refusal to discuss working opportunities with Plaintiff only demonstrated that they

United States District Court
Northern District of California

would never consider using Plaintiff's expertise even though the Project Manager/Senior Scientist position was still open in September 2022 (Plaintiff learned from CRD's Ms. Blackwell that this position was open on February 20, 2023, so it should have been open in September 2022), and Plaintiff has proven record in investigating nutrients biogeochemistry, harmful algal blooms and fish kills." FAC ¶ 49. Plaintiff also alleges in this claim that "a female employee in Defendant's institute oversees the Nutrients Project but Plaintiff doesn't know when this employee started to be in charge of the Nutrients Project." FAC ¶ 50. Plaintiff further alleges that "[t]his employee has no nutrient biogeochemistry, harmful algal blooms and fish kills experience. So again, Defendant gave the management task of the Nutrients Project to another employee who has no nutrients biogeochemistry, harmful algal blooms and fish kills experience."[18]

Plaintiff also alleges that she forwarded her communications with Ms. White to the CRD:

> Plaintiff forwarded her communication with Ms. White to CRD representative Ms. Blackwell on Feb. 5, 2023. On Feb 20, 2023, Ms. Blackwell verbally reviewed Defendant's response to Plaintiff. Plaintiff learned that the Program Manager/Senior Scientist position was still open, which indicated that the position was open when Ms. White copied Plaintiff's email to David Senn on September 5, 2022. Plaintiff asked Ms. Blackwell to tell Defendant that Plaintiff would do anything to help investigate harmful algal blooms and fish kills and wouldn't mind volunteering. Defendant didn't respon[d].

FAC ¶ 31.

### 2. Contentions of the Party

#### a. Motion

In the Motion, Defendant points to the Court's admonition in its December 22, 2023 Order that Plaintiff may assert additional claims only to the extent she has a good faith belief that they have been administratively exhausted and argues that all of her new claims (Claims Three through Six) should be dismissed on the basis of failure to exhaust. Motion at 16. In particular, Defendant points to Plaintiff's failure to allege in the FAC that she filed "an amended or new CRD/EEOC complaint" and further asserts that there is no evidence that Plaintiff has done so. *Id.* Defendant

---

[18] Plaintiff also alleged in Claim Three that David Senn offered a position to "someone in October 2022", FAC ¶ 49, but this information was disclosed to Plaintiff in Defendant's mediation brief and therefore the Court has stricken this allegation.

1    contends Plaintiff's allegation that she "verbally report[ed] these new allegations to the CRD on

2    February 5, and June 8, 2023" is not sufficient to show that she has exhausted these claims.   *Id.*

3         Defendant also challenges this claim on the basis that Plaintiff has failed to allege facts

4    showing discriminatory intent, arguing that Plaintiff has not alleged facts showing that she was

5    qualified for the position she claims she should have been hired for; nor has she alleged facts

6    about the age, race or national origin of anyone who was offered the job Plaintiff contends she

7    should have been hired for.  *Id.* at 18-19.  Defendant argues that Plaintiff does not plausibly allege

8    discriminatory intent based on allegations about the "female employee" in charge of the Nutrients

9    Project because she does not allege her age, race or national origin.  *Id.* at 18.

10              b.   Opposition

11        Plaintiff argues that she has exhausted this claim, citing her allegation that she forwarded

12   her communications with Ms. White to the CRD.  Opposition at 8; *see also* FAC ¶ 31.  She also

13   asserts that the "female employee" – Melissa Foley – is Caucasian and appears to be about

14   fourteen years younger than Plaintiff based on Foley's LinkedIn profile.  *Id.* at 18.

15              c.   Reply

16        In its Reply, Defendant reiterates its argument that Plaintiff has not exhausted this claim

17   because she has not filed an amended administrative complaint asserting the claim before the

18   EEOC. Reply at 4.  It also rejects Plaintiff's arguments seeking to establish discriminatory intent

19   based on Foley's race and age because those facts are not alleged in the FAC.

20         **3.  Discussion**

21        A federal court has jurisdiction over Title VII and ADEA claims that are "reasonably

22   related to the allegations of the EEOC charge." *Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268,

23   271 (9th Cir. 1981) (quoting *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th

24   Cir. 1973)).  "In determining whether an allegation . . . is like or reasonably related to allegations

25   contained in a previous EEOC charge, the court inquires whether the original EEOC investigation

26   would have encompassed the additional charges."  *Green v. Los Angeles Cnty. Superintendent of*

27   *Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989). EEOC charges are to be construed liberally.  *Id.*

28   However, if a plaintiff asserts claims that the EEOC could not reasonably have been expected to

1   investigate pursuant to a charge, then those claims must be dismissed for lack of jurisdiction. *Shah*

2   *v. Mt. Zion Hospital and Medical Center*, 642 F.2d at 271.

3       Defendant contends that Plaintiff has not exhausted as to this claim because she did not

4   amend her administrative complaint, but it does not address the standards set forth above

5   governing the circumstances under which a claimant must amend or file a new charge.  The Ninth

6   Circuit has held that the "like or reasonably related" inquiry encompasses "allegations occurring

7   not only before, but also after the filing of [the plaintiff's administrative] charge."  *Sosa v.*

8   *Hiraoka*, 920 F.2d 1451, 1456–57 (9th Cir. 1990).  Furthermore, the inquiry "is not limited to the

9   actual EEOC investigation" that was conducted, "but can include the scope of an EEOC

10  investigation which can reasonably be expected to grow out of the charge of discrimination."  *Id.*

11  (internal citation and quotations omitted).

12      Here, the administrative charge asserts that Plaintiff was discriminated against on the basis

13  of age, race and national origin based on the allegation that she was "denied hire multiple times to

14  the position of Environmental Scientist[,]" that despite qualifications that David Senn said made

15  her a "good match," she was not selected "even for an interview" and "[e]ach time the position

16  was filled by an individual significantly younger and non-Asian (Caucasian)."  Dkt. no. 9-1.

17  Similarly, Claim Three alleges that Plaintiff made another employment inquiry that was forwarded

18  to David Senn but was not offered a job due to her age, race and national origin.  Under the liberal

19  standard that applies to administrative charges, the Court finds that Claim Three is like or

20  reasonably related to the original charge and within the scope of the investigation that could be

21  expected to grow out of Plaintiff's administrative complaint.  Therefore, the Court finds that this

22  claim has been adequately exhausted.

23      On the other hand, Plaintiff has not alleged sufficient facts to establish discriminatory

24  intent. In particular, while Plaintiff contends her email was a form of job inquiry, she does not

25  plausibly allege that Defendant was hiring for any particular position at the time of her inquiry.

26  Nor does she allege any specific facts about the qualifications required for the position that she

27  speculates must have been open (because SFEI advertised a Project Manager/Senior Scientist

28  position five months later, FAC ¶ 49).  Finally, her allegation that a female employee with no

"nutrients biogeochemistry, harmful algal blooms [or] fish kills experience," FAC ¶ 50, managed the Nutrients Project is of no avail.  There are no allegations that Plaintiff applied for that position or even that the position was ever open during the relevant period, much less allegations concerning the qualifications required for that position. There are simply no facts alleged showing discriminatory failure to hire as to this claim.

Therefore, the Court dismisses Claim Three for failure to state a claim.  Plaintiff will be permitted to amend as to this claim.

### F.   Claim Four

#### 1.   Allegations in the FAC

Claim Four is based on Defendant's failure to respond to a message Plaintiff asked "CRD's Ms. Blackwell" to give Defendant in February 2023 telling Defendant that she "would do anything to help investigate harmful algal blooms and fish kills and wouldn't mind volunteering." FAC ¶ 51.  In this claim, as in Claim Four, Plaintiff again alleges that the Nutrients Project is managed by a female employee with "no nutrient biogeochemistry, harmful algal blooms and fish kills experience." FAC ¶ 52.

#### 2.   Contentions of the Party

Defendant argues that this claim was not administratively exhausted and that Plaintiff has not alleged discriminatory intent.  Plaintiff contends the administrative exhaustion requirement is met as to this claim because the CRD was aware of her inquiry.  She asserts that she has shown discriminatory intent based on the qualifications of Melissa Foley, who heads the Nutrients Project.

#### 3.   Discussion

The Court reaches the same conclusions as to Claim Four as it does as to Claim Three. First, the Court concludes that the claim is like or reasonably related to the claims in Plaintiff's administrative complaintive and therefore, the administrative exhaustion requirement is satisfied. However, Plaintiff has alleged no facts that give rise to a plausible inference of discrimination. Among other things, she has not plausibly alleged that Defendant was hiring for any particular position or alleged specific facts showing that she was qualified for that position.  The mere fact

that Plaintiff allegedly offered to do "anything," even on a volunteer basis, and Defendant did not take her up on that offer is not sufficient to give rise to discriminatory intent.  Nor do Plaintiff's allegations about the woman who managed the Nutrients Project make up for this shortcoming for the reasons discussed above.  Therefore, this claim is dismissed with leave to amend.

## V.      CONCLUSION

For the reasons stated above, Plaintiff's FAC is dismissed with leave to amend to cure the defects set forth above.  Plaintiff may not assert any new claims. Plaintiff also may not disclose statements made in the parties' mediation briefs or at the mediation.   However, as to basic facts that will be subject to discovery, *e.g.*, whether Defendant hired an individual for a particular position who had similar or lesser qualifications but was younger than Plaintiff, or was not in a protected group as to race or national origin, the Court will permit Plaintiff to include in her amended complaint generic allegations based on information and belief to support her claims. Although Rule 408 is intended to shield from disclosure statements and conduct made in mediation, it is *not* intended to "protect pre-existing information simply because it was presented to the adversary in compromise negotiations[,]" as discussed above.  Plaintiff's amended complaint shall be filed by **June 21, 2024.**

**IT IS SO ORDERED.**

Dated:  May 8, 2024

_____
Joseph C. Spero
United States Magistrate Judge